IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-49

 No. 289A20

 Filed 23 April 2021

 IN THE MATTER OF: L.R.L.B.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) and on writ of certiorari

 pursuant to N.C.G.S. § 7A-32(b) from orders entered on 31 March 2020 and 15

 November 2019 by Judge Hal G. Harrison in District Court, Yancey County. This

 matter was calendared in the Supreme Court on 19 March 2021, but determined on

 the record and briefs without oral argument pursuant to Rule 30(f) of the North

 Carolina Rules of Appellate Procedure.

 Hockaday & Hockaday, P.A., by Daniel M. Hockaday, for petitioner-appellee
 Yancey County Department of Social Services.

 Matthew D. Wunsche for appellee Guardian ad Litem.

 Parent Defender Wendy C. Sotolongo and Deputy Parent Defender Annick
 Lenoir-Peek for respondent-appellant mother.

 MORGAN, Justice.

¶1 Respondent-mother appeals from the trial court’s order terminating her

 parental rights to her son “Liam,”1 and from the trial court’s earlier permanency

 planning order which eliminated reunification from Liam’s permanent plan. See

 1 A pseudonym is used to protect the juvenile’s identity and to facilitate ease of
 reading.
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 N.C.G.S. § 7B-1001(a1)(1)–(2) (2019). The termination order also terminated the

 parental rights of Liam’s father, who is not a party to this appeal. Due to our

 conclusion that the permanency planning order lacked findings which address one of

 the four issues contemplated by N.C.G.S. § 7B-906.2(d) (2019), we remand to the trial

 court for the entry of additional findings. However, because the resolution of

 respondent-mother’s claim of error concerning the trial court’s permanency planning

 order is accomplished by remand, instead of by vacation or reversal of the

 permanency planning order at issue as authorized by N.C.G.S. § 7B-1001(a2), it is

 presently premature for this Court to consider the trial court’s order terminating

 respondent-mother’s parental rights.

 I. Factual and Procedural Background

¶2 On 29 August 2018, Yancey County Department of Social Services (DSS)

 obtained nonsecure custody of Liam, who was born almost a year earlier in September

 2017. DSS filed a juvenile petition seeking an adjudication that Liam was neglected.

 The petition alleged that DSS had received a report in July 2018 that respondent-

 mother had been arrested for driving while impaired as Liam rode with her in the

 car. In a second report dated 25 July 2018, respondent-mother accused Liam’s father

 of engaging in domestic violence against her and sexually molesting Liam. While a

 DSS investigation and a forensic examination of Liam would subsequently result in

 a determination that no sexual abuse had occurred, DSS’s first visit with the family
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 following the receipt of the second report occurred while both parents were

 intoxicated and resulted in respondent-mother and Liam moving into a domestic

 violence shelter on the same day.

¶3 The petition further alleged that, following respondent-mother’s transition to

 the domestic violence shelter, DSS received a series of telephone calls during the week

 of 20 August 2018 reporting changes in respondent-mother’s behavior that raised

 concerns about Liam’s safety. Shelter staff workers and Liam’s father described

 respondent-mother as exhibiting “extreme paranoia, uncontrollable crying, [and]

 lapses in memory[,]” including occasions when she left Liam “completely unattended

 causing alarm to shelter staff and the agency.” When DSS attempted to assist

 respondent-mother, she refused to cooperate with the social worker and treatment

 providers. Respondent-mother also refused to submit to a drug screen. Liam’s father

 was excluded as a placement option “due to recent domestic violence incidents and

 ongoing concerns, a criminal history and an active substance abuse issue.”

¶4 Respondent-mother obtained a comprehensive clinical assessment at RHA

 Health Services on 13 September 2018; she signed a Family Services Agreement

 (FSA) with DSS the following day. As part of her FSA, respondent-mother agreed to

 follow the recommendations of her comprehensive clinical assessment, including

 engaging in intermediate-level mental health and substance abuse services, along

 with parenting classes. Respondent-mother also agreed to obtain stable housing and
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 employment in order to demonstrate her ability to provide for Liam’s needs.

¶5 After adjudicatory and dispositional hearings on 15 November and 12

 December 2018, the trial court entered orders on 19 February 2019 adjudicating Liam

 as neglected and ordering DSS to maintain custody of the child. In ordering

 respondent-mother to comply with the requirements of her FSA, the trial court

 specifically mentioned respondent-mother’s compliance with requested drug screens

 and granted her three hours of weekly supervised visitation with Liam. At an initial

 review hearing on 11 March 2019, the trial court found that respondent-mother had

 resumed living with Liam’s father and ordered both parents to submit to a domestic

 violence assessment and to follow any resulting recommendations in addition to

 complying with the existing requirements of their respective case plans.

¶6 The trial court held a permanency planning hearing on 14 June 2019 during

 which it established a primary plan of reunification for Liam with a concurrent plan

 of adoption. At the next review hearing on 9 August 2019, the trial court found that,

 while respondent-mother had “completed some portions of her case plan” including

 parenting classes, she had tested positive for alcohol and amphetamines, and

 continued to exhibit inappropriate behaviors. Specifically, the trial court noted that

 respondent-mother had “acted in a disrespectful way to DSS workers and [did] not

 appreciate the DSS role in protecting the health, safety and welfare of her minor

 child[.]” The trial court ordered DSS to “promptly arrange a psychological evaluation
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 for the respondent-mother through Grandis.” Respondent-mother was admonished

 by the trial court and was directed to “adopt a better attitude.” She was ordered to

 cooperate with DSS, to abstain from using illicit substances, and to “make significant

 progress on her DSS case plan[.]” Despite the identified concerns, the trial court

 maintained Liam’s permanent plan as reunification with a concurrent plan of

 adoption.

¶7 Following the next review hearing on 11 October 2019, the trial court entered

 a permanency planning order on 15 November 2019 which relieved DSS of further

 reunification efforts and changed Liam’s permanent plan to adoption. On 13 January

 2020, respondent-mother filed notice pursuant to N.C.G.S. § 7B-1001(a1)(2)(a) (2019)

 to preserve her right to appeal the order eliminating reunification from the

 permanent plan2.

¶8 On 8 January 2020, DSS filed a petition to terminate the parental rights of

 respondent-mother and Liam’s father. The trial court held a hearing to address the

 petition on 12 March 2020 and entered an order terminating the parental rights of

 both parents on 31 March 2020. The trial court adjudicated the existence of grounds

 2 Although respondent-mother filed her notice beyond the required thirty days as
 established by N.C.G.S. §§ 7B-1001(a1)(2)(a) & (b) (2019), after entry and service of the order,
 nonetheless we allowed respondent-mother’s petition for writ of certiorari to review the
 permanency planning order along with the order terminating her parental rights entered on
 18 December 2020. See generally In re S.C.R., 198 N.C. App. 525, 531 (holding respondent-
 parent waived appellate review under former statute authorizing appeal from order ceasing
 reunification efforts by failing to give timely notice of his intent to appeal), appeal dismissed,
 363 N.C. 654 (2009).
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 for termination under N.C.G.S. § 7B-1111(a)(1)–(2) (2019), based on respondent-

 mother’s neglect of Liam and on her willful failure to make reasonable progress to

 correct the conditions that led to the juvenile’s removal from the home in August

 2018. After considering the dispositional factors enumerated in N.C.G.S. § 7B-1110(a)

 (2019), the trial court concluded that it was in Liam’s best interests for the rights of

 both parents to be terminated.

 II. Respondent-mother’s Appeal

¶9 Respondent-mother filed her notice of appeal from the 15 November 2019

 permanency planning order which eliminated reunification from Liam’s permanent

 plan and from the 31 March 2020 termination order which terminated respondent-

 mother’s parental rights. See N.C.G.S. § 7B-1001(a1) (2019). Pursuant to N.C.G.S. §

 7B-1001(a2) (2019), we “review the order eliminating reunification together with an

 appeal of the order terminating parental rights.”

¶ 10 Respondent-mother limits her appeal to challenges to the trial court’s 15

 November 2019 permanency planning order. Although she does not identify any error

 in the order terminating her parental rights, respondent-mother contends that the

 alleged reversible errors in the permanency planning order require us to vacate the

 termination order under N.C.G.S. § 7B-1001(a2), which provides that “[i]f the order

 eliminating reunification is vacated or reversed, the order terminating parental

 rights shall be vacated.”
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 A. Standard of review

¶ 11 Our review of a permanency planning order “ ‘is limited to whether there is

 competent evidence in the record to support the findings [of fact] and whether the

 findings support the conclusions of law.’ The trial court’s findings of fact are

 conclusive on appeal if supported by any competent evidence.” In re L.M.T., 367 N.C.

 165, 168 (2013) (alteration in original) (quoting In re P.O., 207 N.C. App. 35, 41

 (2010)). The trial court’s dispositional choices—including the decision to eliminate

 reunification from the permanent plan—are reviewed only for abuse of discretion, as

 those decisions are based upon the trial court’s assessment of the child’s best

 interests. See In re J.H., 373 N.C. 264, 267–68 (2020).

 B. Challenged findings

¶ 12 Respondent-mother challenges several portions of the trial court’s Finding of

 Fact 6 in its permanency planning order, claiming that those portions are “either not

 supported or contrary to the evidence.” Although respondent-mother offers no

 argument or discussion about the significance of these asserted errors, we address

 each of her challenges to the trial court’s findings in turn. Finding of Fact 6 states, in

 pertinent part:

 that since the matter was last reviewed, the juvenile has
 remained in foster care placement; that the respondent
 parents have signed DSS case plans; that respondent
 mother has completed Triple P Parenting; obtained her
 [comprehensive clinical assessment]; completed intensive
 outpatient substance abuse treatment; is now engaged in
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 the intermediate SA program; reports that she attends
 AA/NA weekly; has provided clean drug screens through
 RHA but has tested positive on two (2) occasions for
 alcohol; has participated in peer support and medication
 management through RHA; has not complied with DSS
 requested drug screens; has not maintained stable
 residence; has not maintained stable employment; has
 received three (3) separate sanctions through Yancey Drug
 Court (one (1) occasion for missed appointment and two (2)
 occasions for failed screens for alcohol); has not obtained
 her psychological evaluation (delayed scheduling the
 evaluation until recently); that the respondent father . . .
 has a pending criminal charge for assault (respondent
 mother is the alleged victim); . . . the respondent parents
 (despite current Release Order in the pending criminal
 matter) are currently residing with each other; that there
 have been recent incidents of domestic violence and
 continued alcohol abuse; that the parents recently were
 evicted from their prior residence; that the juvenile was
 removed from the care of the respondent parents as a result
 of domestic violence and substance abuse issues; that the
 parents have not made reasonable progress on their DSS
 case plan to eliminate the issues the juvenile [sic] came into
 custody . . . .

 All portions of this finding which are not specifically contested by respondent-mother

 are deemed to be supported by competent evidence and are binding on appeal.

 Koufman v. Koufman, 330 N.C. 93, 97 (1991).

¶ 13 Respondent-mother first objects to the trial court’s determination that she

 tested positive for alcohol on two occasions, asserting that “those [positive tests]

 occurred several months prior to the 11 October 2019 hearing, on 22 March 2019 and

 27 May 2019.” While respondent-mother accurately characterizes the evidence, her

 observation does not undercut the evidentiary support for the trial court’s finding in
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 any way. Finding of Fact 6 reflects the trial court’s summary of respondent-mother’s

 progress through the entirety of the case, as reflected by the determinations that she

 had signed a DSS case plan, obtained a comprehensive clinical assessment, and

 completed parenting classes. The evidence introduced at the hearing showed that

 respondent-mother had five positive drug screens at RHA between 6 March 2019 and

 2 July 2019, four of which included a positive result for alcohol. While the trial court

 did find that Liam had remained in his foster placement “since the matter was last

 reviewed,” it did not purport to limit its remaining findings to that sole time interval.

 Therefore, the trial court’s unconditional determination that respondent-mother

 “tested positive on two (2) occasions for alcohol” is supported by competent evidence

 and is binding on appeal.

¶ 14 Respondent-mother next challenges the determination within Finding of Fact

 6 that she “has not complied with DSS requested drug screens[.]” Respondent-mother

 represents that she submitted to drug screens as requested by DSS on 30 July 2019

 and on 7 and 14 August 2019, “in addition to the multiple screens she undertook with

 RHA and Drug Treatment Court.” However, competent evidence supports the

 challenged portion of the finding. DSS social worker Tammy Carpenter testified at

 the hearing that respondent-mother failed to comply with the agency’s call-in system

 for drug screens, through which parents are assigned “dates and times they need to

 call” to be notified as to whether to appear for a drug screen that day. DSS also
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 introduced a log of respondent-mother’s call schedule for a period of time between 8

 and 31 July 2019 which reflected that respondent-mother placed telephone calls to

 DSS on only three of the fifteen days that she was assigned to contact DSS through

 its call-in system. While the evidence does show that negative drug screens for

 respondent-mother were registered on the three dates listed by her, other competent

 evidence supports the finding that she was not fully compliant with DSS’s drug screen

 requests. This challenged portion of the trial court’s Finding of Fact 6 is thus binding

 on appeal. See In re L.M.T., 367 N.C. at 168.

¶ 15 Respondent-mother also disputes the determination that she failed to

 maintain stable housing because the evidence “show[ed] that she had lived at the

 same address for over a year prior to her eviction.” However, respondent-mother’s

 argument is contradictory. As respondent-mother acknowledged in her testimony,

 she and Liam’s father were evicted from their apartment in the weeks leading up to

 the 11 October 2019 permanency planning hearing. Respondent-mother testified that

 she stayed with her mother for a period of time thereafter, but moved into a new

 apartment with Liam’s father two weeks before the hearing date. DSS social worker

 Carpenter testified that she had “no idea” where respondent-mother had resided

 since respondent-mother’s eviction and that respondent-mother had not complied

 with the housing component of respondent-mother’s case plan. Respondent-mother’s

 admission that she was evicted from her home after some period of time exceeding
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 just more than one year, followed by her two different residences shortly before the

 permanency planning hearing date of 11 October 2019, does not comport with the

 maintenance of stable housing by respondent-mother. These circumstances coupled

 with the testimony of the DSS social worker concerning the stability of respondent-

 mother’s housing provide ample credence to the trial court’s determination contained

 in Finding of Fact 6 that respondent-mother “has not maintained stable residence.”

¶ 16 Respondent-mother next challenges the trial court’s finding that she received

 “three . . . separate sanctions” in drug treatment court. Respondent-mother correctly

 notes that the hearing testimony established two, rather than three, occasions for

 which respondent-mother was sanctioned in drug court: once for missing an

 appointment and once for a positive alcohol screen. We shall disregard the trial

 court’s erroneous finding of a third sanction, which we deem to be a harmless error

 in light of the unequivocal existence of two separate sanctions. See In re B.E., 375

 N.C. 730 (2020).

¶ 17 Finally, respondent-mother likewise takes issue with the trial court’s

 determination “that there have been recent incidents of domestic violence and

 continued alcohol abuse,” contending that the evidence showed only one additional

 incident of domestic violence between her and Liam’s father. As support for her

 stance, respondent-mother points to the arrest warrant included in the record on

 appeal which charges Liam’s father with an assault on respondent-mother which was
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 allegedly committed on 26 September 2019.

¶ 18 Assuming arguendo that the evidence showed only a single episode of domestic

 violence between respondent-mother and Liam’s father, which was recent at the time

 of the trial court’s determination, we discern no error. Respondent-mother’s

 argument is based upon her convenient construction of the trial court’s phraseology

 in its determination and does not constitute a substantive objection. We believe the

 phrase “recent incidents of domestic violence and continued alcohol abuse” may be

 fairly interpreted to combine one or more recent incidents of domestic violence with

 one or more recent incidents of continued alcohol abuse. We further note that, in

 addition to the evidence that Liam’s father allegedly assaulted respondent-mother on

 26 September 2019, DSS social worker Carpenter testified that the couple’s landlord

 reported that the eviction of respondent-mother and Liam’s father from their

 apartment transpired “because of domestic violence, yelling, arguing, people call[ing]

 and telling him that [respondent-mother and Liam’s father] were making a fuss all

 the time[,] and due to finding lots of alcohol, liquor bottles outside of the residence.”

 This testimony tends to establish a series of occurrences of domestic violence and

 alcohol abuse rather than, as respondent-mother contends, one solitary additional

 incident. Consequently, the trial court’s reference to multiple “incidents” is properly

 supported and binding on appeal. In re L.M.T., 367 N.C. at 168.
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 C. Sufficiency of Findings

¶ 19 Respondent-mother claims that the trial court erred in eliminating

 reunification from Liam’s permanent plan without making the findings of fact which

 are required by N.C.G.S. § 7B-906.2(d) (2019).3 While the trial court complied with

 the majority of N.C.G.S. § 906.2(d)’s mandate regarding the establishment of specific

 findings of fact which the trial court must reduce to writing as a preface to the

 elimination of reunification from the permanent plan, we agree with respondent-

 mother that the trial court’s findings are sufficiently inadequate so as to compel us to

 remand the case to the trial court for the entry of additional findings consistent with

 the mandate of N.C.G.S. 7B-906.2(d).

¶ 20 Under N.C.G.S. § 7B-906.2(b) (2019), the trial court may eliminate

 reunification from a child’s permanent plan if the trial court “makes written findings

 that reunification efforts clearly would be unsuccessful or would be inconsistent with

 the juvenile’s health or safety.” Id. Subsection (d) of the statute further provides that,

 in making its determination about the appropriate permanent plan,

 the court shall make written findings as to each of the
 following, which shall demonstrate the degree of success or

 3 Respondent-mother notes that the trial court’s failure to include a secondary
 permanent plan in the 15 November 2019 permanency planning order would appear to
 violate N.C.G.S. § 7B-906.2(a1) and (b) (2019), under which the trial court must designate
 concurrent permanent plans “until a permanent plan is or has been achieved.” Respondent-
 mother concedes, however, that the trial court established concurrent plans of adoption and
 guardianship at the next permanency planning hearing on 13 January 2020, “thereby
 rendering [her] argument moot.”
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 failure toward reunification:

 (1) Whether the parent is making adequate progress
 within a reasonable period of time under the plan.

 (2) Whether the parent is actively participating in or
 cooperating with the plan, the department, and the
 guardian ad litem for the juvenile.

 (3) Whether the parent remains available to the court,
 the department, and the guardian ad litem for the
 juvenile.

 (4) Whether the parent is acting in a manner
 inconsistent with the health or safety of the juvenile.

 N.C.G.S. § 7B-906.2(d).

¶ 21 We have held that “[t]he trial court’s written findings must address the

 statute’s concerns, but need not quote its exact language.” In re L.M.T., 367 N.C. at

 168 (interpreting former N.C.G.S. § 7B-507(b)(1) (2011)). “Instead, ‘the order must

 make clear that the trial court considered the evidence in light of whether

 reunification would be futile or would be inconsistent with the juvenile’s health,

 safety, and need for a safe, permanent home within a reasonable period of time.’ ”

 In re L.E.W., 375 N.C. 124, 129–30 (2020) (quoting In re L.M.T., 367 N.C. at 168).

¶ 22 Moreover, when reviewing an order that eliminates reunification from the

 permanent plan in conjunction with an order terminating parental rights pursuant

 to N.C.G.S. § 7B-1001(a1)(2), “we consider both orders ‘together’ ” as provided in

 N.C.G.S. § 7B-1001(a2). In re L.M.T., 367 N.C. at 170. Based on this statutory

 directive, we concluded in In re L.M.T. that “incomplete findings of fact in the cease
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 reunification order may be cured by findings of fact in the termination order.” 4 Id.

 Although respondent-mother contends that a 2017 amendment to N.C.G.S. § 7B-1001

 “abrogated” our ruling in In re L.M.T. on this issue, we find her argument

 unpersuasive.

¶ 23 In Session Law 2017-41, § 8, 2017 N.C. Sess. Laws 214, 233, the General

 Assembly amended N.C.G.S. § 7B-1001 to transfer appellate jurisdiction in

 termination of parental rights cases from the Court of Appeals to this Court effective

 1 January 2019. The session law deleted a portion of N.C.G.S. § 7B-1001(a)(5)

 requiring the Court of Appeals to “review the order eliminating reunification as a

 permanent plan together with an appeal of the termination of parental rights

 order[,]” and inserted the following text in a revised version of N.C.G.S. § 7B-

 1001(a2):

 In an appeal filed pursuant to subdivision (a1)(2) of this
 section, the Supreme Court shall review the order
 eliminating reunification together with an appeal of the
 order terminating parental rights. If the order eliminating
 reunification is vacated or reversed, the order terminating
 parental rights shall be vacated.

 4 At the time of our decision in In re L.M.T., a parent’s right to appeal from a
 permanency planning order was triggered by the trial court’s cessation of reunification efforts
 rather than its elimination of reunification from the permanent plan as in current N.C.G.S.
 §§ 7B-1001(a)(5) and (a1)(2) (2019). In re L.M.T., 367 N.C. at 167–70 (discussing former
 N.C.G.S. §§ 7B-507(b)(1) and 7B-1001(a)(5) (2011)). Section 7B-906.2 now directs the trial
 court to “order the county department of social services to make efforts toward finalizing the
 primary and secondary permanent plans” until permanence is achieved. N.C.G.S. § 7B-
 906.2(b).
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 S.L. 2017-41, § 8(a), 2017 N.C. Sess. Laws at 233 (emphasis added). The amended

 statute thus retained the requirement that the appellate court review the two orders

 “together” while adding language to require that if this Court vacates or reverses the

 order eliminating reunification from the permanent plan, we must also vacate the

 termination of parental rights order. Id.

¶ 24 As opposed to respondent-mother’s interpretation, we do not construe the 2017

 amendment to N.C.G.S. § 7B-1001 to alter the approach that we adopted in In re

 L.M.T.; the amendment, on its face, merely precludes a determination by this Court

 that a harmful error in an order eliminating reunification from a permanent plan can

 be rendered moot solely by the subsequent entry of an order terminating parental

 rights. Cf., e.g., In re H.N.D., 265 N.C. App. 10, 19 (2019) (“hold[ing] that the question

 of whether the trial court erred in ceasing reunification efforts was rendered moot by

 the proper termination order”)5. For this reason, we reject the argument of the

 guardian ad litem in the present case that the order terminating respondent-mother’s

 parental rights “moots [respondent-mother’s] arguments about the order ceasing

 reunification efforts.” As for respondent-mother’s construction of the 2017 legislative

 amendment and her view of the amendment’s impact on In re L.M.T., respondent-

 5 The Court of Appeals exercised its jurisdiction in the case of In re H.N.D. prior to the

 transfer of appellate jurisdiction in termination of parental rights cases from the Court of
 Appeals to this Court and revision of N.C.G.S. § 7B-1001(a)(2) which was accomplished by
 the General Assembly in Session Law 2017-41, § 8, 2017 N.C. Sess. Laws 214, 233.
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 mother erroneously conflates a fatally defective order eliminating reunification from

 a permanent plan, which cannot be cured by the subsequent termination order, with

 an incomplete order with insufficient findings of fact, which may be cured under In

 re L.M.T. by findings of fact in the termination order.

¶ 25 In light of these observations, we recognize that the trial court’s 15 November

 2019 permanency planning order includes findings “that reunification is no longer

 the appropriate permanent plan for the juvenile” and “[t]hat further reasonable

 efforts to prevent or eliminate the need for placement of the juvenile are clearly futile

 or inconsistent with the juvenile’s need for a safe, permanent home within a

 reasonable period of time.” The trial court thus made the finding required by N.C.G.S.

 § 7B-906.2(b) to eliminate reunification from the permanent plan. See In re L.E.W.,

 375 N.C. at 133. However, with regard to N.C.G.S. § 7B-906.2(d), although the trial

 court’s findings of fact adequately address the issues reflected in N.C.G.S. § 7B-

 906.2(d)(1), (2), and (4), the tribunal’s findings fail to address the issue in N.C.G.S. §

 7B-906.2(d)(3), “[w]hether the parent remains available to the court, the department,

 and the guardian ad litem for the juvenile.” As a result, we deem it to be appropriate

 to remand this matter to the trial court in order to rectify the order’s deficiencies.

¶ 26 Consistent with N.C.G.S. § 7B-906.2(d)(1), the trial court addresses in Finding

 of Fact 6 whether each parent is making adequate progress within a reasonable time

 under the permanent plan by detailing their achievements and shortcomings in
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 meeting the conditions of their respective case plans. The trial court goes on to make

 an express finding “that the parents have not made reasonable progress on their DSS

 case plan to eliminate the issues [since] the juvenile came into custody[.]” The trial

 court’s determinations contained in Finding of Fact 6 also note that Liam had been

 in DSS custody for more than twelve months and identify “the parents’ failure to

 comply with their case plan requirements” as “the barrier to . . . reunification[.]” To

 the extent that respondent-mother contends that Finding of Fact 6 shows that she

 “made adequate progress” by obtaining a comprehensive clinical assessment,

 completing parenting classes, participating in substance abuse treatment, and

 providing several clean drug screens, we conclude that the trial court’s contrary

 evaluation is a reasonable view of the evidence and is therefore binding on appeal.

 See generally In re D.L.W., 368 N.C. 835, 843 (2016) (recognizing the trial court’s

 authority as fact-finder to weigh competing evidence and draw reasonable inferences

 therefrom); see also In re J.H., 373 N.C. at 270 (finding “ample evidentiary support

 for the trial court’s finding that respondent only made ‘some progress’ with respect to

 her parenting skills”).

¶ 27 Similarly, with regard to N.C.G.S. § 7B-906.2(d)(2), Finding of Fact 6, in

 addressing whether the parents are actively participating in or cooperating with the

 plan, the department, and the guardian ad litem for the juvenile, adequately

 describes respondent-mother’s degree of participation with her case plan and
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 indicates her non-cooperation with DSS drug screens. This portion of the finding of

 fact featured the evidence adduced at the hearing of respondent-mother’s inability to

 address the domestic violence, housing, and substance abuse issues which resulted

 in Liam’s removal from her care. These determinations by the trial court satisfy the

 requirements of Section 7B-906.2(d)(2), and are analogous to the trial court’s findings

 which were deemed to have satisfactorily addressed this subsection of the statute by

 the Court of Appeals in In re N.T., 264 N.C. App. 753, 2019 WL 1471147, *6 (2019)

 (unpublished).

¶ 28 Although the trial court made no specific finding as to whether respondent-

 mother was “acting in a manner inconsistent with the health or safety of the juvenile”

 under the exact language of N.C.G.S. § 7B-906.2(d)(4), the trial court found that

 respondent-mother and Liam’s father were residing together despite “recent

 incidents of domestic violence and continued alcohol abuse”—the very problems that

 necessitated Liam’s removal from the home; that Liam’s father had yet to complete

 his court-ordered domestic violence assessment; and that returning Liam to his

 parents’ home would be “contrary to his welfare and best interests at this time.” The

 trial court also concluded in its 15 November 2019 permanency planning order that

 further efforts to “eliminate the need for placement” of Liam outside of the home

 would be “inconsistent with the juvenile’s need for a safe, permanent home within a

 reasonable period of time.” Further, the termination order contains additional
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 uncontested findings that respondent-mother failed to maintain stable housing; that

 she “never obtained her [court-ordered] psychological evaluation” and “was kicked

 out of the [drug treatment court program] for noncompliance”; and that the failure of

 respondent-mother and Liam’s father to “eliminate those reasons the juvenile came

 into custody demonstrates their continued neglect of [Liam] and the probability of

 future neglect if [Liam] is returned to their care.” See generally In re Stumbo, 357

 N.C. 279, 283 (2003) (“requir[ing] that there be some physical, mental, or emotional

 impairment of the juvenile or a substantial risk of such impairment” in order for a

 parent’s conduct to constitute “neglect”). We conclude that these findings by the trial

 court adequately address the substance and concerns of N.C.G.S. § 7B-906.2(d)(4)

 through the application of the principle in In re L.M.T., 367 N.C. at 168, in which we

 recognized earlier that the trial court is not required to quote the exact language of

 N.C.G.S. § 7B-906.2(d)(4) as long as the trial court’s written findings address the

 statute’s concerns.

¶ 29 However, we agree with respondent-mother that the trial court failed to make

 the findings required by N.C.G.S. § 7B-906.2(d)(3), as to whether respondent-mother

 “remains available to the court, the department, and the guardian ad litem[.]” Aside

 from acknowledging respondent-mother’s attendance at the 11 October 2019

 permanency planning hearing and referencing her absence from the termination

 hearing on 12 March 2020, the trial court found no facts addressing the issue
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 embodied in Section 7B-906.2(d)(3) with regard to respondent-mother.6 In re L.M.T.,

 367 N.C. at 168. While the record contains little evidence presented by the parties on

 the issue of respondent-mother’s availability as contemplated by the statute, we note

 that DSS’s written report to the trial court for the permanency planning hearing

 includes information about respondent-mother’s attendance at court dates and

 scheduled visitations, as well as her failure to attend child and family team (CFT)

 meetings. The report submitted by the guardian ad litem also alludes to respondent-

 mother’s failure to attend CFT meetings and states that “[t]he GAL has spoken to the

 parents three times but . . . has had no significant interactions in the last six months.”

 This information contained in the respective reports of DSS and the GAL, however,

 does not satisfy the trial court’s statutory obligation to fulfill the requirements of

 N.C.G.S. § 7B-906.2(d)(3) by making written findings on the issue of respondent-

 mother’s availability.

¶ 30 Having concluded that the trial court failed to make the findings of fact

 required by N.C.G.S. § 7B-906.2(d)(3), the identification of the appropriate remedy

 for the omission has provided the next determination for this Court. In citing

 N.C.G.S. § 7B-1001(a2) for her assertion that the trial court’s non-compliance with

 N.C.G.S. § 7B-906.2(d) in the order eliminating reunification from the permanent

 6The permanency planning order includes a finding that Liam’s father “has not
 maintained consistent contact with DSS[,]” thereby addressing at least part of the statutory
 mandate as to him.
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 plan “requires reversal of both [the permanency planning order] and the resulting

 termination order,” respondent-mother identifies two cases in which the Court of

 Appeals vacated a permanency planning order because “ ‘the trial court failed to make

 the requisite findings required to cease reunification efforts’ under Section 7B-

 906.2(d).” In re J.M., 843 S.E.2d 668, 676 (N.C. Ct. App. 2020) (quoting In re D.A.,

 258 N.C. App. 247, 254 (2018)).

¶ 31 It is axiomatic that “this Court is not bound by precedent of our Court of

 Appeals[.]” In re B.L.H., 376 N.C. 118, 126 (2020). Moreover, as we discuss below, we

 find neither In re J.M. nor In re D.A. to be instructive in our determination regarding

 the implementation of the directive in N.C.G.S. § 7B-1001(a2) that, “[i]f the order

 eliminating reunification is vacated or reversed, the order terminating parental

 rights shall be vacated.” N.C.G.S. § 7B-1001(a2).

¶ 32 In In re J.M., the respondent-mother appealed from a permanency planning

 order that placed her child in the guardianship of the juvenile’s foster parents, waived

 further review hearings, and relieved DSS of reunification efforts. 843 S.E.2d at 670,

 676; see also N.C.G.S. § 7B-1001(a)(4). Hence, the appeal was taken from a single

 order which transferred the child’s legal custody, see N.C.G.S. § 7B-1001(a)(4) (2019),

 and did not address a subsequent order terminating the respondent’s parental rights.

 The Court of Appeals vacated the portion of the order ceasing reunification efforts

 due to the trial court’s failure to make findings under N.C.G.S. § 7B-906.2(d)(2)–(3),
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 while affirming the order in part as to the guardianship provisions and the waiver of

 further review hearings. Id. at 676.

¶ 33 In In re D.A., the Court of Appeals vacated a permanency planning order that

 granted custody of the respondents’ child to the juvenile’s foster parents. 258 N.C.

 App. at 248. As in In re J.M., the appeal was taken from a single order transferring

 the legal custody of the child. The Court of Appeals held that the trial court’s findings

 did not support its conclusion that the father had acted inconsistently with his

 constitutionally protected status as a parent, the sine qua non of an award of

 permanent custody of the child to a non-parent. Id. at 252. While the Court of Appeals

 also concluded that “[t]he trial court failed to make findings related to whether

 [r]espondents were acting in a manner inconsistent with D.A.’s health or safety”

 under N.C.G.S. § 7B-906.2(d)(4), the lower appellate court further held that the trial

 court made “no findings that embrace the requisite ultimate finding that

 ‘reunification efforts clearly would be unsuccessful or would be inconsistent with the

 juvenile’s health or safety’ ” as required to eliminate reunification from the child’s

 permanent plan under N.C.G.S. § 7B-906.2(b). Id. at 254. The deficiencies in the order

 in In re D.A. materially exceeded the mere lack of findings under one of the specified

 issues of N.C.G.S. § 7B-906.2(d), and therefore justified the vacation of the order in

 the case. Id.; see also In re D.C., 852 S.E.2d 694, 698–99 (N.C. Ct. App. 2020)

 (“Because the trial court ceased reunification efforts without making sufficient
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 findings pertinent to section 7B-906.2(d) and the ultimate finding required by section

 7B-906.2(b), we vacate the trial court’s orders and remand for further proceedings.”).

¶ 34 Due to these critical distinctions, neither In re J.M. nor In re D.A. presents this

 Court with correlating examples of the manner in which to settle an order’s

 termination of a respondent’s parental rights when an earlier permanency planning

 order does not include sufficient written findings as to one of the four issues—but

 does include findings on the ultimate issue—which must be addressed as a preface to

 the elimination of reunification from the permanent plan, where this Court must

 consider both orders together, adhere to N.C.G.S. § 7B-1001 (a1)(2) and the amended

 § 7B-1001(a2), and comply with our precedent in In re L.M.T.

¶ 35 We do not discern that the Legislature enacted N.C.G.S. § 7B-1001(a2) with

 the intention of disengaging an entire termination of parental rights process in the

 event that a trial court omits a single finding under N.C.G.S. § 7B-906.2(d)(1)–(4)

 from its trial court order which eliminates reunification from a child’s permanent

 plan. Unlike the specific finding that “reunification efforts clearly would be

 unsuccessful or would be inconsistent with the juvenile’s health or safety” which is

 required by N.C.G.S. § 7B-906.2(b) before eliminating reunification from the

 permanent plan, no particular finding under N.C.G.S. § 7B-906.2(d)(3) is required to

 support the trial court’s decision. N.C.G.S. § 7B-906.2(d) merely requires the trial

 court to make “written findings as to each of the” issues enumerated in N.C.G.S. §
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 7B-906.2(d)(1)–(4), and to consider whether the issues “demonstrate the [parent’s]

 degree of success or failure toward reunification[.]” N.C.G.S. § 7B-906.2(d). A finding

 that the parent has remained available to the trial court and other parties under

 N.C.G.S. § 7B-906.2(d)(3) does not preclude the trial court from eliminating

 reunification from the permanent plan based on the other factors in N.C.G.S. § 7B-

 906.2(d). Cf. In re R.D., 376 N.C. 244, 259 (2020) (concluding that the balancing of the

 six dispositional factors in N.C.G.S. § 7B-1110(a) “is uniquely reserved to the trial

 court and will not be disturbed by this Court on appeal”).

¶ 36 “[T]o obtain relief on appeal, an appellant must not only show error, but that

 . . . the error was material and prejudicial, amounting to denial of a substantial right

 that will likely affect the outcome of an action.” In re L.E.W., 375 N.C. at 128. It is

 the trial court’s authority as the finder of fact to assign weight to various pieces of

 evidence, In re D.L.W., 368 N.C. at 843, in exercising “its discretion [to] determine[e]

 that ceasing reunification [is] in the best interests of the child[,]” In re J.H., 373 N.C.

 at 270. Upon considering the trial court’s order that eliminated reunification from the

 permanent plan together with its order terminating parental rights, and determining

 that the trial court’s order eliminating reunification may be cured upon remand to

 the trial court—pursuant to the application of In re L.M.T.—due to insufficient

 findings of fact contained in the order because it does not address the issue embodied

 in N.C.G.S. § 7B-906.2(d)(3) as to “whether the parent remains available to the court,
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 the department, and the guardian ad litem for the juvenile,” we conclude that

 respondent-mother has not shown that the trial court’s error was material and

 prejudicial so as to warrant vacating and reversing the permanency planning order

 at issue and vacating the termination of parental rights order.

¶ 37 We therefore believe that the appropriate remedy for the trial court’s error here

 is to remand this matter to the trial court for the entry of additional findings in

 contemplation of N.C.G.S. § 7B-906.2(d)(3). Cf. In re N.K., 375 N.C. 805, 825 (2020)

 (remanding for findings on the trial court’s compliance with the Indian Child Welfare

 Act (ICWA)); State v. Peterson, 344 N.C. 172, 177–178 (1996) (holding no error in part

 as to the judgment but remanding in part for further findings on suppression issue).

 This Court’s precedent, especially our express determination in In re L.M.T.

 regarding the relationship between incomplete findings in an order which ceases

 reunification efforts and the findings of fact in a subsequent termination of parental

 rights order, authorizes such a remedy. In the event that the trial court concludes,

 after making additional findings, that its decision to eliminate reunification from the

 juvenile Liam’s permanent plan in its 15 November 2019 permanency planning order

 was in error, then the trial court shall vacate said order as well as vacate the order

 terminating respondent-mother’s parental rights, enter a new permanent plan for the

 juvenile that includes reunification, and resume the permanency planning review

 process. See N.C.G.S. § 7B-1001(a2); cf. In re N.K., 375 N.C. at 825 (“In the event that
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

 the trial court determines on remand that Ned is, in fact, an Indian child, it shall

 vacate the trial court’s termination order and proceed in accordance with the relevant

 provisions of ICWA.” (extraneity omitted)). If the trial court’s additional findings

 under N.C.G.S. § 7B-906.2(d)(3) do not alter its finding under N.C.G.S. § 7B-906.2(b)

 that further reunification efforts “are clearly futile or inconsistent with the juvenile’s

 need for a safe, permanent home within a reasonable period of time[,]” then the trial

 court may simply amend its permanency planning order to include the additional

 findings, and the 31 March 2020 order terminating respondent-mother’s parental

 rights may remain undisturbed. Cf. In re N.K., 375 N.C. at 825 (“[If] the trial court

 concludes upon remand, after making any necessary findings or conclusions, that the

 notice requirements of ICWA were properly complied with . . . , it shall reaffirm the

 trial court’s termination order.”).

 III. Conclusion

¶ 38 Respondent-mother does not identify any error in the order terminating her

 parental rights as to the child Liam, and we do not consider the termination order in

 this decision. With regard to the order eliminating reunification from Liam’s

 permanent plan, competent evidence supports all of the trial court’s findings of fact

 except for its finding that respondent-mother was sanctioned three times in drug

 treatment court; in determining from the evidence that respondent-mother was

 sanctioned on two occasions in drug treatment court rather than on three occasions
 IN RE L.R.L.B.

 2021-NCSC-49

 Opinion of the Court

as the trial court erroneously found, we conclude that this constitutes harmless error

by the trial court. We further hold that the trial court sufficiently addressed the

majority of the issues mandated by N.C.G.S. § 7B-906.2, and that this substantial

compliance with the statute obviates the need for vacation or reversal of the trial

court’s order eliminating reunification from the permanent plan, since there is the

availability of a sanctioned remedy which is less drastic and more plausible.

Consequently, in light of the trial court’s failure to make written findings as required

by N.C.G.S. § 7B-906.2(d)(3), we remand to the District Court, Yancey County, to

enter such necessary findings and to determine whether those findings affect its

decision to eliminate reunification from the permanent plan pursuant to N.C.G.S.

§ 7B-906.2(b). The trial court may receive additional evidence upon this remand as it

deems appropriate within its sound discretion, and shall enter new or amended

orders consistent with this opinion. See In re K.R.C., 374 N.C. 849, 865 (2020).

 REMANDED.