COLLINS, Judge.
 

 *331
 

 *10
 
 Respondent-Appellant Mother (Mother) appeals from orders ceasing reunification efforts with and terminating her parental rights to her minor children L.N.A-D. (Lee) and H.N.D. (Hank)
 
 [1]
 
 (collectively, the
 
 *11
 
 Children). She contends that the trial court erred by making various findings of fact and conclusions of law in both orders. We affirm in part and dismiss in part.
 

 I. Background
 

 On 24 February 2014, Petitioner-Appellee Cumberland County Department of Social Services ("DSS") filed a juvenile petition alleging that Lee was neglected and dependent. The DSS petition alleged the following: (1) Mother had a history of domestic violence with Lee's father Jerry Dennings; (2) Mother and Dennings had a physical altercation on or about 27 December 2013 in which Dennings hit Mother in Lee's presence and forced her out of the house threatening to kill her if she took Lee, after which Mother left Lee with Dennings; (3) Mother stated that she attempted to retrieve Lee from the house on 30 December 2013, but could not do so because Dennings fired a gun at her; (4) Dennings was involved in a physical altercation with another woman involving a gun in Lee's presence on 17 February 2014; (5) the police came to Dennings' house on 17 February 2014, Dennings fled as a result leaving Lee unsupervised, and Mother retrieved Lee the same day; (6) starting on 17 February 2014, Mother told social workers she had moved with Lee into the house of another man with whom she had children, and with whom she had a similar history of domestic violence, including multiple physical altercations in the presence of Mother's children.
 

 DSS obtained nonsecure custody of Lee on 24 February 2014. On 5 May 2014, pursuant to an agreement between DSS and Mother, the trial court adjudicated Lee dependent because of domestic violence issues, and on 26 June 2014 a disposition order was entered. On 18 November 2014, an initial permanency planning hearing took place, and the trial court established a plan of reunification with Mother. In its permanency planning order, the trial court found that Mother and Dennings continued to reside together as a couple and that they had not appropriately addressed their domestic violence issues. The trial court thus concluded that it was not possible for Lee to return to his parents' custody because the conditions which had led to his removal had not yet been alleviated. Subsequent permanency planning orders continued with a plan of reunification.
 

 Following Hank's birth on 3 April 2015, DSS filed a petition alleging that Hank was neglected and dependent. The 17 April 2015 petition described the findings from the prior order adjudicating Lee dependent, and alleged continuing issues between Mother and Dennings, including a 17 April 2015 argument in which Dennings threatened to break Mother's
 
 *12
 
 neck. DSS obtained nonsecure custody of Hank on 17 April 2015. At a 23 September 2015 hearing, DSS and Mother stipulated to Hank's dependent status because of domestic violence issues. On 24 May 2014, the trial court entered an adjudication and disposition order adjudicating Hank dependent.
 

 By written order entered 24 March 2017, the trial court ordered the primary permanent plans for both Lee and Hank to be adoption, and no longer reunification with Mother. In so doing, the trial court found a "long and enduring" history of domestic violence between Mother and Dennings, including an incident in August 2016 in which Dennings was arrested for assaulting Mother with a deadly weapon and Mother sought a restraining order against Dennings. The orders were entered on 28 March 2017, and Mother timely preserved her right to appeal them on 30 March 2017. Subsequent permanency planning orders continued with the plan of adoption.
 

 *332
 
 On 19 September 2017, DSS filed a petition to terminate Mother's rights to the Children. Hearings took place in February and March 2017, after which the trial court entered an order terminating Mother's parental rights on 27 June 2018. Mother timely noticed her appeal of the permanency planning order ceasing reunification efforts and the order terminating her parental rights on 18 July 2018.
 

 II. Appellate Jurisdiction
 

 This Court has jurisdiction to hear Mother's appeal under N.C. Gen. Stat. § 7B-1001(a)(5) (2017)
 
 [2]
 
 and Mother is a proper party under N.C. Gen. Stat. § 7B-1002(4) (2017).
 

 III. Issues on Appeal
 

 Mother raised the following issues on appeal: (1) whether the trial court erred in ceasing reunification efforts with Mother; and (2) whether the trial court erred in terminating Mother's parental rights. Because we conclude that the trial court did not err regarding the termination of parental rights, a conclusion which renders Mother's appeal of the cessation of reunification efforts moot and obviates analysis thereof, we will address the termination of parental rights first.
 

 *13
 

 IV. Analysis
 

 a. Order Terminating Parental Rights
 

 A termination-of-parental-rights proceeding is a two-step process.
 
 In re D.A.H.-C.
 
 ,
 
 227 N.C. App. 489
 
 , 493,
 
 742 S.E.2d 836
 
 , 839 (2013). In the initial adjudication phase, the petitioner has the burden to "show by clear, cogent and convincing evidence that a statutory ground to terminate exists" under N.C. Gen. Stat. § 7B-1111 (2017).
 

 Id.
 

 (citation omitted). If the petitioner meets its evidentiary burden with respect to a statutory ground and the trial court concludes that the parent's rights may be terminated, then the matter proceeds to the disposition phase, at which the trial court determines whether termination is in the best interests of the child.
 
 In re T.D.P.
 
 ,
 
 164 N.C. App. 287
 
 , 288,
 
 595 S.E.2d 735
 
 , 736-37 (2004). If the trial court so determines, it may terminate the parent's rights in its discretion.
 
 In re Howell
 
 ,
 
 161 N.C. App. 650
 
 , 656,
 
 589 S.E.2d 157
 
 , 161 (2003).
 

 In reviewing a trial court's order to terminate parental rights, this Court must first determine, with respect to the adjudication phase, whether the "findings of fact are supported by clear, cogent and convincing evidence[.]"
 
 In re S.N.
 
 ,
 
 194 N.C. App. 142
 
 , 145-46,
 
 669 S.E.2d 55
 
 , 58 (2008) (citation omitted). "Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt," and requires "evidence which should fully convince."
 
 In re Mills
 
 ,
 
 152 N.C. App. 1
 
 , 13,
 
 567 S.E.2d 166
 
 , 173 (2002) (citations omitted). If satisfied that the record contains clear, cogent, and convincing evidence supporting the findings of fact, the Court must then determine whether the findings of fact support the trial court's conclusions of law.
 
 S.N.
 
 ,
 
 194 N.C. App. at 146
 
 ,
 
 669 S.E.2d at 58-59
 
 . This Court reviews the trial court's legal conclusions
 
 de novo
 
 .
 

 Id.
 

 Finally, with respect to the disposition phase, this Court reviews a trial court's decision that termination is in the best interests of the child for abuse of discretion, and will reverse only where the trial court's decision is "manifestly unsupported by reason."
 

 Id.
 

 (quoting
 
 Clark v. Clark
 
 ,
 
 301 N.C. 123
 
 , 129,
 
 271 S.E.2d 58
 
 , 63 (1980) ).
 

 Our analysis of the order terminating Mother's rights is limited to whether the trial court erred in the adjudication phase, by either (1) making findings of fact unsupported by clear, cogent, and convincing evidence, or (2) by erroneously concluding that N.C. Gen. Stat. § 7B-1111 provides grounds to terminate Mother's rights to the Children. Mother does not argue that the trial court erred in the disposition phase,
 
 *14
 
 i.e., in deciding that termination of her rights was in the
 
 *333
 
 best interests of the Children, and as such that issue is not before us.
 

 In its order, the trial court concluded that the following five separate grounds existed to terminate Mother's rights: (1) neglect, N.C. Gen. Stat. § 7B-1111(a)(1) ; (2) failure to make reasonable progress, N.C. Gen. Stat. § 7B-1111(a)(2) ; (3) failure to pay for the Children's care, N.C. Gen. Stat. § 7B-1111(a)(3) ; (4) dependency, N.C. Gen. Stat. § 7B-1111(a)(6) ; and (5) abandonment, N.C. Gen. Stat. § 7B-1111(a)(7). A determination that any of the grounds existed is sufficient to affirm.
 
 T.D.P.
 
 ,
 
 164 N.C. App. at 290-91
 
 ,
 
 595 S.E.2d at 738
 
 .
 

 The trial court concluded that grounds existed to terminate Mother's rights under N.C. Gen. Stat. § 7B-1111(a)(6), which sets forth that a parent's rights to her child may be terminated if "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C. Gen. Stat. §] 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6).
 

 The trial court made the following pertinent and specific findings of fact underpinning its conclusion that N.C. Gen. Stat. § 7B-1111(a)(6) is applicable in this case:
 

 65. The juveniles are dependent as defined by N.C. Gen. Stat. § 7B-101(9) in that the Respondent Mother does not have an ability to provide care or supervision to the juveniles based on her unwillingness to remain independent from the Respondent Father, as well as her issues with domestic violence, instability, and untreated mental health issues. Additionally, the Respondent Father does not have an ability to provide care of supervision for the juveniles based on his untreated mental health issues that result in explosive anger outbursts, substance abuse issues, and issues of domestic violence.
 

 66. The Court finds that these causes or conditions prevent the Respondents from having the ability to parent in that both the Respondent Mother and the Respondent Father continue to minimalize the seriousness of the domestic violence between them, as well as the Respondent Father's failure to acknowledge any issues with substance abuse.
 

 67. The Court accepted as evidence the previously completed examinations from the underlying files wherein the
 
 *15
 
 Respondents were examined by a psychiatrist, physician, public or private agency or any other expert to ascertain the parent's ability to care for the juveniles resulting in the Respondent Father's Comprehensive Mental Health Assessment/Parenting Evaluation submitted to the Court as Cumberland County Department of Social Services Exhibit #13, and the Respondent Mother's Comprehensive Mental Health Assessment/Parenting Evaluation submitted to the Court as Cumberland County Department of Social Services Exhibit #12. The Court finds, based on these reports, the following:
 

 a. In 2014, the Respondent Father completed a Comprehensive Mental Health Assessment and Parenting Evaluation as ordered by the Court. It was noted that the Respondent Father has a significant history of mental health issues, substance abuse, and legal problems. He was previously diagnosed by the Haymount Institute with Mood Disorder NOS, Alcohol Abuse, Nicotine Dependence, Cannabis Dependence, Opioid Dependence, Amphetamine (Ecstasy) Dependence, Bipolar Disorder, Post Traumatic Stress Disorder, and Intermittent Explosive Disorder. His current diagnosis included Adjustment Disorder with mixed anxiety and depressed mood and Cannabis Use Disorder-mild. It was recommended that the Respondent Father reengage in mental health treatment to address his depressive and anxious symptoms, engage in individual therapy to address coping skills and anger management, continue with substance abuse counseling and treatment to address triggers that could lead him to use again, engage in couples' counseling to address the issues of violence and power and control evident in his relationships, and see a psychiatrist for medication management if the therapist believes medication management would be helpful. The Court finds
 
 *334
 
 that the Respondent Father did not engage in the recommended services.
 

 b. In 2014, the Respondent Mother completed a Comprehensive Mental Health Assessment and Parenting Evaluation as ordered by the Court. During the evaluation, the assessor noted that the Respondent Mother attempted to present herself in a favorable manner, which invalidated the results. The Respondent Mother appeared to minimize
 
 *16
 
 her problems, and there were discrepancies between the information that the Respondent Mother provided and the Respondent Mother's collateral records. The Respondent Mother did not report any symptoms that met the criteria for a mental health diagnosis; however, the tests results were invalid and suggested she may exhibit some signs of hypervigilance. The assessor also noted as part of her evaluation that the Respondent Mother was residing with the Respondent Father Dennings and that their relationship was fraught with domestic violence. It was recommended that the Respondent Mother complete family counseling with her children, complete couples' counseling with the Respondent Father to address their dynamic of domestic violence, and that she participate in individual counseling to address barriers to having healthy relationships. The Court finds that the Respondent Mother did not engage in the recommended services, especially as it pertains to the couples counseling needed to address the dynamic of domestic violence and she quit individual counseling before her therapist released her.
 

 68. The Court finds, based on the above mental health assessments and the willful failure of the Respondents to engage in the recommended services, that the Respondents are currently incapable of providing for the proper care and supervision for the juveniles and that there is a reasonable probability that such incapability will continue for the foreseeable future due to the lack of completion of services and the repetition of the domestic violence pattern seen in this matter, particularly with respect to the August 2016 incident.
 

 69. The Court finds that Respondent Parents lack an appropriate alternative child care arrangement in that no kin or relative has been appropriate or given by the Respondents throughout the pendency of the case.
 

 Based upon these findings, the trial court concluded that Mother's rights were subject to termination under N.C. Gen. Stat. § 7B-1111(a)(6).
 

 There is clear, cogent, and convincing record evidence to support these findings of fact. In his testimony before the trial court, Dennings admitted to (1) being diagnosed with explosive disorder and (2) using drugs a week before the hearing and failing to complete substance
 
 *17
 
 abuse counseling. The record also contains evidence that Dennings was charged with criminal child neglect in 2014 for a physical altercation with a woman other than Mother that involved a gun and took place in Lee's presence. Regarding the history of domestic violence between Mother and Dennings, the record contains: (1) evidence that Mother told a social worker that Dennings had threatened to "break her face[,]" threatened to kill her, and subsequently shot a gun at her in 2013; (2) an Incident Report from the Fayetteville Police Department describing the August 2016 incident for which Dennings was arrested for assault with a deadly weapon because he "pistol whipped [Mother] with his handgun[,]" and noting that Mother was hospitalized as a result and initially sought to press charges against Dennings for the assault; and (3) the Domestic Violence Impact Statement filled out by Mother on the day of the August 2016 incident, in which she describes being choked by Dennings both in an earlier incident in 2013 and in the August 2016 incident in which Dennings allegedly pistol-whipped her. The record also contains evidence that Mother conceded that the Children were dependent in the meaning of N.C. Gen. Stat. § 7B-101 based upon the dynamic of domestic violence between her and Dennings. In its 5 May 2014 order adjudicating Lee dependent, the trial court noted that Mother had stipulated with DSS that she was "unable to provide for the care, control and supervision of" Lee, and stipulated that Lee was dependent "due to domestic violence," including the December
 
 *335
 
 2013 incident where Mother and Dennings had a physical altercation in Lee's presence. Additionally, in an executed Stipulation Agreement dated 9 June 2015 between Mother, DSS, and Hank's guardian ad litem, Mother agreed to Hank's dependency adjudication based upon the fact that she and Dennings "were unable to provide for the care or supervision of the juvenile" because of "[d]omestic violence," and also expressly agreed to the incorporation of certain allegations from the relevant petition as factual bases for the order adjudicating Hank's dependency, including (1) Mother's "history of domestic violence with ... Dennings," (2) that Mother had engaged in a physical altercation with Dennings in December 2013 while Lee was in their care, and (3) that Mother had not substantially completed services ordered by the court. We thus determine that the trial court's findings regarding Dennings' issues, the existing pattern of domestic violence between Mother and Dennings, and the Children's resulting dependency are each supported by clear, cogent, and convincing evidence in the record.
 

 The record also contains clear, cogent, and convincing evidence that Mother was, is, and will likely remain unwilling to cut Dennings out of her and the Children's lives, despite their troubled history together. Before the trial court, Mother testified that she did not follow through
 
 *18
 
 with pressing charges against Dennings for the August 2016 incident because it would interfere with her work. Mother also testified that: (1) she facilitated contact between Dennings and the Children during one of her visits with the Children in January 2017, despite having knowledge that the trial court had ordered Dennings was to have no contact with the Children at the time; (2) she had seen Dennings socially without the Children as recently as February 2018; and (3) she intends to have contact with Dennings going forward "when it's involving the kids and stuff[.]"
 

 Mother is correct that she and Dennings were never ordered not to have contact with each other
 
 .
 
 But whether Mother was legally required to stay away from Dennings is not a question before us today. A question that
 
 is
 
 before us today is whether Mother is incapable of providing for the proper care and supervision of her children, and if so, whether Mother's incapability is reasonably probable to continue into the foreseeable future. N.C. Gen. Stat. § 7B-1111(a)(6). Despite the fact that Mother was and remains free to maintain a relationship with Dennings, Mother's stated intent to keep Dennings in her life-and importantly, to keep Dennings in the Children's lives-in spite of the enduring pattern of violence Mother has suffered at Dennings' hands
 
 [3]
 
 is clear, cogent, and convincing evidence that Mother is incapable of providing for the proper care and supervision of the Children, such that the Children are dependent in the meaning of N.C. Gen. Stat. § 7B-101 (2017), and that there is a reasonable probability that the incapability will continue for the foreseeable future. N.C. Gen. Stat. § 7B-1111(a)(6). We accordingly conclude that the trial court was authorized to terminate Mother's rights to the Children pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), and we affirm the trial court's decision to do so on that basis.
 

 Because we affirm the trial court's termination of Mother's parental rights under N.C. Gen. Stat. § 7B-1111(a)(6), we need not address the other grounds upon which termination was based.
 
 T.D.P.
 
 ,
 
 164 N.C. App. at 290-91
 
 ,
 
 595 S.E.2d at 738
 
 .
 

 b. Order Ceasing Reunification
 

 Mother also contends that the trial court erred in ceasing reunification efforts with her in its 26 October 2016 order.
 

 *19
 
 In
 
 In re V.L.B.
 
 ,
 
 164 N.C. App. 743
 
 ,
 
 596 S.E.2d 896
 
 (2004), this Court held that a mother's appeal from a permanency planning order ceasing reunification efforts with her was rendered moot by the trial court's subsequent
 
 *336
 
 order terminating her parental rights.
 
 Id.
 
 at 745,
 
 596 S.E.2d at 897
 
 . The
 
 In re V.L.B.
 
 Court so held because the trial court "made independent findings and conclusions that d[id] not rely on the permanency planning order" in the order terminating the mother's parental rights after it heard the testimony of witnesses and admitted the underlying case file into evidence.
 

 Id.
 

 The trial court here followed the same course. The trial court specifically found in its order ceasing reunification efforts that "termination of parental rights should not be pursued" at the time of that order. Months later, after taking significant additional testimony and admitting the case file into evidence, the trial court made extensive findings of fact and conclusions of law not found in the order ceasing reunification efforts, and terminated Mother's parental rights. Notably, these included findings regarding then-current conditions leading the trial court to conclude that N.C. Gen. Stat. § 7B-1111(a)(6) was applicable at that time.
 

 Since we conclude that the trial court did not err in terminating Mother's parental rights, and since, like in
 
 In re V.L.B.
 
 , the order terminating Mother's parental rights made findings of fact and conclusions of law independent of the order ceasing reunification efforts, we conclude that Mother's appeal of the order ceasing reunification efforts with her has been rendered moot.
 

 V. Conclusion
 

 Because we conclude that the trial court's findings of fact are supported by clear, cogent, and convincing evidence in the record, that the findings of fact support the trial court's conclusions of law, and because Mother has not challenged the trial court's determination that termination of Mother's rights is in the best interests of the Children, we hold that the trial court did not err in terminating Mother's parental rights. We further hold that the question of whether the trial court erred in ceasing reunification efforts was rendered moot by the proper termination order.
 

 We accordingly affirm the trial court's order terminating Mother's parental rights and dismiss Mother's appeal of the permanency planning order ceasing reunification efforts.
 

 AFFIRMED IN PART AND DISMISSED IN PART.
 

 Judges DILLON and INMAN concur.
 

 [1]
 

 Pseudonyms are used to protect the minors' identities.
 

 [2]
 

 N.C. Gen. Stat. § 7B-1001 was amended effective 1 January 2019 such that appeals involving orders terminating parental rights made after that date now lie directly to our Supreme Court. 2017 N.C. Sess. Laws ch. 41, § 8.(a);
 
 compare
 
 N.C. Gen. Stat. § 7B-1001(a) (2017) (jurisdiction with Court of Appeals prior to 1 January 2019),
 
 with
 
 N.C. Gen. Stat. § 7B-1001(a1) (2017) (jurisdiction with Supreme Court from 1 January 2019 onward). Since Mother's appeal was noticed prior to 1 January 2019, we have jurisdiction to hear Mother's appeal.
 

 [3]
 

 Whether Mother "was the victim, and not the perpetrator or aggressor" in her history of violence with Dennings is of no moment.
 
 In re J.S.
 
 ,
 
 182 N.C. App. 79
 
 , 86,
 
 641 S.E.2d 395
 
 , 399 (2007) ("The purpose of the adjudication and disposition proceedings should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent. The question this Court must look at on review is whether the court made the proper determination in making findings and conclusions as to the status of the juvenile.").