IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-701

Filed 18 April 2023

Gaston County, No. 20-JT-65

In re:

B.M.S.

Appeal by Respondent-Mother from order entered 9 June 2022 by Judge John K. Greenlee in Gaston County District Court. Heard in the Court of Appeals 22 March 2023.

> *Elizabeth Myrick Boone for Petitioner-Appellee Gaston County Department of Health and Human Services.*
>
> *Michelle FormyDuval Lynch for Guardian ad Litem.*
>
> *Kimberly Connor Benton for Respondent-Appellant Mother.*

COLLINS, Judge.

Respondent-Mother appeals from the trial court's order terminating her parental rights to her minor child based upon neglect and willfully leaving the child in foster care or placement outside the home for more than 12 months without showing that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the child. Mother argues that the trial court reversibly erred by concluding that it was in the child's best interests to terminate Mother's parental rights. We affirm.

## I.  Background

Mother is the biological parent of Bella,[1] who was born on 7 November 2019. The day after Bella's birth, while Mother and Bella were stilled hospitalized, Gaston County Department of Health and Human Services ("DSS") received a report from the hospital that Mother had been seen hiding drug paraphernalia at the hospital and was found unresponsive on the floor.  Mother admitted that she was hiding a pill bottle, a cigarette, a vape pen, and a syringe without a needle, and stated that she had taken a Xanax.  Mother also admitted to using heroin and other prescription drugs, and she tested positive for benzodiazepines, barbiturates, and opiates. Hospital staff observed that Bella was experiencing withdrawal symptoms, in the form of jitters and tremors, and Bella required morphine to control the withdrawal symptoms.  The hospital staff reported that Mother did not show an interest in Bella, did not want to feed her, and threatened to leave Bella alone in the hospital if the staff tried to place Bella in another room.  Following the hospital's report, DSS initiated a safety plan between Mother and Bella; DSS placed Bella in a temporary safety foster home and required that Mother have no unsupervised contact with Bella.  Mother further agreed to engage in substance abuse treatment and mental health services.

On 26 February 2020, DSS filed a petition alleging that Bella was neglected

---

[1] We use a pseudonym to protect the identity of the minor child.  *See* N.C. R. App. P. 42.

based upon Mother's substance abuse. Despite agreeing to engage in substance abuse treatment and mental health services, Mother only went for one substance abuse assessment at Bridging the Gap, a treatment program. During that assessment, Mother admitted to continued use of illegal substances and admitted that she continued to use heroin while also taking prescription methadone. Bridging the Gap reported that they could not work with Mother until she completed a detoxification program and inpatient treatment, but Mother refused either treatment option. Mother also failed to comply with two requested drug screens and then tested positive for drugs during two other requested drug screens.

Bella was adjudicated neglected on 15 September 2020 based upon Mother's substance abuse. Mother was ordered to contact DSS to enter into a new case plan; comply with the terms of her case plan; refrain from using or abusing illegal or mindaltering substances; complete a mental health and substance abuse assessment and comply with the treatment recommendations; submit to drug testing as requested by DSS and have negative results; enroll in and complete parenting classes; obtain and maintain safe, appropriate, and stable housing; attend visits with Bella and demonstrate effective parenting skills; sign all necessary consents for DSS; refrain from criminal activity; and obtain and maintain employment and provide for Bella's needs.

From October 2020 through August 2021, Mother made some progress on her case plan as she enrolled in substance abuse treatment classes and attended a little

over half of the recommended treatment hours. Mother also enrolled in and attended some parenting classes and attended some of the scheduled visitation with Bella. However, Mother failed to make progress on much of her case plan: she was unsuccessfully discharged from her substance abuse treatment program; attended only a few of the drug screens by DSS, and tested positive during the drug screens that she attended; did not engage in mental health treatment; and did not provide DSS with proof of employment or income.

On 25 August 2021, DSS filed a petition to terminate Mother's parental rights, alleging that Mother neglected Bella, that Bella would be neglected if returned to her care, and that Mother willfully left Bella in foster care for more than 12 months without showing to the trial court that reasonable progress had been made in correcting the conditions that led to Bella's removal from Mother's care. At a permanency planning hearing in September, the trial court found that Mother still had not complied with mental health treatment, substance abuse treatment, medication management, or requested drug screens. It also found that Mother had not re-engaged in substance abuse treatment after being unsuccessfully discharged from her first treatment program. At subsequent permanency planning hearings, the trial court found that Mother continued not to comply with mental health or substance abuse treatment, did not comply with drug screens, did not obtain or show proof of employment, and failed to provide DSS with updates on her case plan progress.

The matter came on for hearing on 9 May 2022. The trial court found that grounds existed to terminate Mother's rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), neglect, and N.C. Gen. Stat. § 7B-1111(a)(2), willfully leaving Bella in foster care or placement outside the home for more than 12 months while failing to make reasonable progress in correcting the conditions which led to Bella's removal. The trial court then concluded that it was in Bella's best interests for Mother's rights to be terminated. Mother filed a timely notice of appeal on 21 June 2022.

## II. Discussion

Mother argues that the trial court committed reversible error by concluding that it was in Bella's best interests to terminate Mother's parental rights. Mother does not challenge the adjudicatory portion of the trial court's ruling and this issue is not before us. *See In re A.J.T.*, 374 N.C. 504, 508, 843 S.E.2d 192, 195 (2020).

## A. Standard of Review

"Termination of parental rights involves a two-stage process." *In re L.H.*, 210 N.C. App. 355, 362, 708 S.E.2d 191, 196 (2011) (citation omitted). "At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under section 7B-1111(a) of our General Statutes." *In re D.C.*, 378 N.C. 556, 559, 862 S.E.2d 614, 616 (2021) (quotation marks and citation omitted). "If the petitioner meets its evidentiary burden with respect to a statutory ground and the trial court concludes that the parent's rights may be terminated, then the matter proceeds to the

disposition phase, at which the trial court determines whether termination is in the best interests of the child." *In re H.N.D.*, 265 N.C. App. 10, 13, 827 S.E.2d 329, 332-33 (2019) (citation omitted). If, in its discretion, the trial court determines that it is in the child's best interests, the trial court may then terminate the parent's rights. *In re Howell*, 161 N.C. App. 650, 656, 589 S.E.2d 157, 161 (2003).

This Court reviews the "trial court's dispositional findings of fact . . . under a 'competent evidence' standard." *In re K.N.K.*, 374 N.C. 50, 57, 839 S.E.2d 735, 740 (2020) (citations omitted). A trial court's findings of fact are binding "where there is some evidence to support those findings, even though evidence might sustain findings to the contrary." *In re J.C.J.*, 381 N.C. 783, 795, 874 S.E.2d 888, 897 (2022) (citation omitted). We review a trial court's assessment of a juvenile's best interest at the dispositional stage for abuse of discretion, reversing only where the decision is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 423 (2019) (quotation marks and citations omitted).

## B. Disposition

Mother challenges the trial court's dispositional findings of fact 1, 6, 7, 8, 9, and 16 as being unsupported by competent evidence.

At the dispositional hearing, the trial court may consider

> written reports or other evidence concerning the needs of the juvenile. . . . The Court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule

> 801, including testimony or evidence from any person who is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.

N.C. Gen. Stat. § 7B-901(a) (2022). The trial court may also incorporate into its findings information from written reports, as well as findings made at adjudication. *In re K.W.*, 272 N.C. App. 487, 494, 846 S.E.2d 584, 589 (2020).

### 1. *Dispositional Finding of Fact 1*

The trial court incorporated all of its findings from the adjudication in the dispositional order's finding of fact 1, which provides: "The Court hereby restates and incorporates its Adjudicatory Findings of Fact as if fully set out in this portion of the Order." However, Mother specifically explains that she "only challenges findings of fact 31 and 34 from the adjudicatory portion of the order" as being unsupported by evidence. Adjudicatory finding of fact 31 states that "Respondent/mother has failed to obtain stable and appropriate housing" and the ajudicatory finding of fact 34 states that "Respondent/mother has failed to consistently stay in contact with the Department."

We agree with Mother that there does not appear to be record or testimonial support for finding of fact 31. Our review of the evidence shows that, on multiple occasions, DSS reports noted that Mother failed to provide them with proof of stable housing. Additionally, when asked if Mother had provided any proof of maintaining safe and appropriate housing for her and Bella throughout the entire process,

Covington, a DSS social worker, responded, "She has not." However, the trial court's finding did not speak to whether Mother provided DSS with *proof* of stable housing; it found that Mother failed to obtain stable and appropriate housing. Mother testified that she lived with her mom at the same address for 3.5 years and a DSS report shows that DSS was aware that Mother was residing at that address. It is unclear whether or not DSS found the housing acceptable, but the testimonial evidence shows that both Mother and DSS knew that Mother was living at the maternal grandmother's home. The record and testimonial evidence thus do not support that Mother failed to obtain stable and appropriate housing.

Record and testimonial evidence supports finding of fact 34. A social worker testified at trial that Mother attended only approximately 40% of drug screenings requested by DSS and that her visitation with Bella was not consistent. Mother testified that she stopped attending the requested drug screens and stopped providing DSS with requested employment information in July 2021. Record evidence shows that DSS attempted multiple times to obtain an update on Mother's substance abuse issues, housing status, and employment status, and that Mother did not update DSS with that information. This competent evidence supports that Mother failed to consistently stay in contact with DSS. *In re K.N.K.*, 374 N.C. at 57, 839 S.E.2d at 740.

### 2. *Dispositional Finding of Fact 6*

Finding of fact 6 states: "A permanent plan of care can only be accomplished

by the severing of the relationship between the juvenile and the Respondent/Mother by termination of parental rights of the Respondent/Mother."

The unchallenged findings of fact and testimony from a DSS social worker support finding of fact 6. The trial court found that "[t]he termination of the parental rights of [Mother] will aid in the accomplishment of the permanent plan [of adoption] for the juvenile" and that Bella "deserves safety, security, emotional support and a permanent home." Additionally, Covington testified that the permanent plan for Bella was adoption and that termination of Mother's parental rights would be both helpful and necessary in accomplishing that plan. This competent evidence supports that the permanent plan of Bella's adoption could only be accomplished by terminating Mother's rights. *In re K.N.K.*, 374 N.C. at 57, 839 S.E.2d at 740.

### 3. *Dispositional Findings of Fact 7 & 8*

Finding of fact 7 states that "the juvenile has a bond with Respondent/Mother. The bond has diminished, as Respondent/Mother has only been able to visit the juvenile once a month due to the lack of Respondent/Mother's progress on her case plan." Finding of fact 8 states that "[t]he juvenile knows who Respondent/mother is and is excited to visit Respondent/Mother; however, the juvenile does not get upset or emotional when visitation with Respondent/Mother is over or if Respondent/mother misses a visit."

Testimony from Covington supports findings of fact 7 and 8. Covington testified that: Bella had "a parental bond" with Mother; Bella saw Mother for only

one hour per month during supervised visits; Mother was not consistent with her visits; and Mother was previously allowed more visitation time but her time was decreased due to her lack of progress with her case plan. Covington further testified that while Bella gets excited to see her Mother during visits, she has gone more than a month without seeing Mother and that there were no issues of sadness or negative behaviors as a result of the missed visits; Bella just "continues on." Record evidence and the trial court's finding of fact 33 support that Mother missed visits with Bella. This competent evidence supports that Bella has a diminished bond with Mother and support the remainder of findings of fact 7 and 8. *See In re H.B.*, 877 S.E.2d 128, 139 (N.C. Ct. App. 2022) (affirming a finding that a bond did not exist between parent and child where the parent did not care for the child and failed to visit consistently).

### 4. Dispositional Finding of Fact 9

Finding of fact 9 states: "That the conduct of Respondent/Mother has been such as to demonstrate that she will not promote the juvenile's physical or emotional well-being."

The following unchallenged adjudicatory findings, incorporated into dispositional finding of fact 1, support that Mother will not promote Bella's physical and emotional well-being. The trial court found that:

> 17. The juvenile was adjudicated to be a "Neglected" juvenile within the meaning of G.S. 7B-101(15) by Order entered August 18, 2020. . . .
> . . . .

20. The juvenile [Bella] is thirty (30) months of age. The juvenile has been in the custody of the Department for approximately twenty-seven (27) months.

21. The Court has regularly reviewed Respondent Mother's case progress toward regaining custody of the juvenile, and the Court has never concluded at any hearing that Respondent/Mother has made reasonable progress to warrant returning custody to Respondent/Mother.

22. Respondent/Mother has failed to correct the conditions that led to the removal of the juvenile from her custody, such that the neglect would continue if the juvenile were returned to Respondent/Mother's care. The neglect has continued through the date of this hearing and is not due to the poverty of the Respondent/Mother.

23. Respondent/Mother entered into a case plan with the Department; however, failed to complete said case plan.

. . . .

25. Respondent/mother has submitted to drug screens and has tested positive for illegal substances on most of her drug screens. . . .

26. Respondent/mother provided sworn testimony that she has had a substance abuse addiction for eight (8) years with a $400.00 a day habit. Respondent/mother also testified that she did not test positive for heroin on her drug screens for Department; however, she used heroin when she relapsed in July 2021.

. . . .

28. Respondent/mother testified under oath that she last used heroin two and a half weeks ago.

29. Respondent/mother has obtained a dual assessment; however, has not completed the recommended services. Respondent/mother enrolled in treatment . . . in November 2020; however, did not complete treatment and was discharged from program. Respondent/mother enrolled in treatment at Beaty Recovery Services; however, did not complete the individual therapy and was discharged from the program in July of 2021.

. . . .

32. Respondent/Mother has found some employment while the juvenile has been in the custody of the Department; however, Respondent/Mother has failed to maintain employment or sufficient financial resources to support the juvenile.

33. Respondent/mother attended some visits with the juvenile.

. . . .

35. Respondent/Mother has failed to contribute to the financial support of the juvenile through regular child support contributions and has failed to provide for the basic needs of the juvenile.

36. Since the juvenile has been in foster care, Respondent/Mother has failed to demonstrate the ability to meet the juvenile's basic needs for food, shelter, clothing, education, and health care.

37. Respondent/Mother has failed to demonstrate the ability to parent and protect the juvenile.

38. The Court finds that there were multiple items on Respondent/Mother's case plan to be completed and she has completed parenting classes and completed several mental health and substance abuse assessments; however, never completed mental health or substance abuse treatment.

39. The Court further finds that there is a high likelihood of a repetition of neglect in that none of the conditions that brought the juvenile into the Department's custody has been corrected.

. . . .

41. The Court finds that Respondent/Mother neglected the juvenile within the meaning of G.S. 7B-1111(a)(1) and G.S. 7B-101(15) in that the neglect has continued through the date of this hearing and is not due solely to the poverty of the Respondent/Mother. Respondent/Mother has failed to correct the conditions that led to the removal of the juvenile from her custody, specifically substance abuse, such that

neglect would continue if the juvenile was returned to her care. The juvenile was previously adjudicated neglected and there is a high probability of the reptition of neglect if the juvenile was returned to the custody of Respondent/Mother.

42. The Court also finds that grounds exist based on G.S. 7B-1111(a)(2) in that Respondent/Mother has willfully, and not due solely to poverty, left the juvenile in foster care or placement outside of the home for more than twelve (12) months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to removal of the juvenile.

These unchallenged findings show that Mother failed to correct the substance abuse conditions which led to Bella's removal and support that a risk of future neglect is probable. Record evidence shows that Bella had drugs in her system at birth, suffered from withdrawal symptoms that had to be treated with morphine, and that Mother admitted at the hospital to using heroin. The findings show that Mother admitted to using heroin just two weeks prior to the hearing on the termination of her parental rights. The competent record evidence and unchallenged findings of fact support the finding that Mother's conduct demonstrates "that she will not promote the juvenile's physical or emotional well-being." *In re K.N.K.*, 374 N.C. at 57, 839 S.E.2d at 740.

### 5. *Dispositional Finding of Fact 16*

Finding of fact 16 states: "The negative impact on the juvenile if Respondent/Mother's parental rights are terminated would be minimal and the juvenile would be more than capable of handling such an impact."

Covington's testimony provides support for finding of fact 16. Covington testified that Bella had gone more than a month without seeing Mother and did not have any behavioral issues from Mother missing the visits; she also testified that Bella has not expressed "any sadness or negative behaviors after long breaks between visits." Moreover, Covington was specifically asked about any potential negative impact on Bella:

> Q. What is the likelihood of [Bella] being adopted if both the Respondent parent's rights were terminated today?
>
> A. It would be highly likely.
>
> Q. And do you have any concerns with any negative impact on [Bella] if the parent's parental rights were terminated?
>
> A. Negative, like behaviorally, I mean simply because I haven't seen it. I mean she -- it's hard to say like as far as like any cognitive. I mean of course not seeing her mom may play an impact to some degree but --
>
> Q. Do you think it will -- is it a long-term concern that you have?
>
> A. No.

This testimony provides support for the challenged finding of fact. *In re K.N.K.*, 374 N.C. at 57, 839 S.E.2d at 740.

### 6. *Best Interests Determination*

When making its best interests determination and dispositional findings,

> the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.

- 14 -

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant considersation.

N.C. Gen. Stat. § 7B-1110(a) (2022). It is the province of the trial court to weigh these factors, and it may assign more weight to one or more factors over the others. *In re C.L.C.*, 171 N.C. App. 438, 448, 615 S.E.2d 704, 709-10 (2005). The best interests of the child is the "polar star" for the trial court to consider. *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984).

Here, the trial court made the requisite findings of fact as to all factors listed in N.C. Gen. Stat. § 7B-1110(a) and Mother does not contest that the trial court made findings as to all of these factors. Instead, Mother argues that the trial court failed to make a reasoned analysis and give sufficient weight to her maternal bond with Bella. However, the transcript shows that the trial court carefully considered Mother's bond with Bella:

> The Court: . . . This goes to [Mother], and, obviously, there is a mother-daughter bond there, obviously.
>
> It's evidenced by her excitement, what she calls her, the fact that they do interact well together during the visits. So there is a bond, and I'm not in any way naïve enough or blind to the fact that if those visits stopped there would be a potential negative reaction from [Bella]. I mean that's -- of course. You have a bond with someone. You have a relationship with someone. That relationship ends, and it

can be hard. But for my purposes at this point in the hearing, my only concern of whether it's -- how hard it is and whether it's hard on [Bella]. I have no doubt that it's going to be exteremly hard on [Mother], but that legally speaking my polar star is [Bella], not [Mother], and how she's going to react to it or how it's going to make them feel.

I'm sure it would be devastating, but legally speaking and practically speaking and in all intents what's best for [Bella], I have to look at what it's going to do to [Bella], potentially do to [Bella].

. . . .

Frankly, this seems to be a child from the evidence I've heard that is extremely well-adjusted, very adaptive, a child that is flexible and a child that amazingly considering the situation, is open to bonding and forming these close relationships with people that care for her and she cares for.

I don't always see that. I see these things sometimes stunting children. I've got evidence that she's excited whens she gets to see her mom and her grandmother, and she's excited when she gets to go back home to her foster home where she spends the majority of her time, honest -- I mean when you have one hour a month out of the amount of . . . hours in a month, the overwhelming majority of the time she spends with her foster family and foster siblings. She seems to be very adaptable and willing to form bonds and no problem forming bonds, loving bonds, bonds that excite her, bonds that make her happy. She has that with her mother. She has that with her grandmother. She has that with her foster family and her foster siblings.

So, ultimately, what I have to decide under all of the factors under 7B-1110, not just one, but all of the factors, what's in her best interest moving forward, today forward fully recognizing that terminating any type of bond could be upsetting to her. But she's certainly shown the ability and the developmental ability to adapt and overcome hardships in her life and the fact that she's in foster care very well. . . . [Bella] deserves a safe, stable, appropriate, loving, caring home, all of those things, not just one or two of them, but

all of them.

I have no doubt that [Bella] is loved by her mother, her grandmother . . . but that also exists in her current placement where she's been for the majority of her life, over half of her life anyway. She came into custody, . . . approximately three months old, a three-month-old, who is starting to form memories, attachments, and remember things, and starting to build these things, she -- she has only known foster care. That's all she's ever known.

. . . .

Love is very important. I don't doubt that she gets that from [Mother], no doubt, but the reality is for almost two years, everything else, including the love that she gets from her foster family and her foster siblings, everything else she's gotten from her foster family, everything else . . . . So I certainly understand the social worker's opinion that that bond would be stronger because it's a daily bond that's reinforced daily. . . .

. . . .

But you've said it yourself, she deserves a fit mom that she deserves and you've -- you've indicated and agreed that, in fact, you said today you take full responsibility for the fact that you aren't that today.

. . . .

Every day this child gets older. Every day this child has new experiences in her life, and she -- she deserves that and she deserves to be somewhere she knows she's going to be and safe, stable, and appropriate.

The trial court thoughtfully considered and analyzed the bond between Bella and Mother in its dispositional ruling, and particularly considered any potential impact that severing the bond could have on Bella. After such consideration, the trial court determined that it was in Bella's best interests to terminate Mother's parental rights. The trial court did not abuse its discretion by terminating Mother's parental

rights as its decision was well-reasoned and supported by the record evidence. *See In re A.J.T.*, 374 N.C. at 512, 843 S.E.2d at 197 ("The bond between parent and child is just one of the factors to be considered[.]" (brackets and citation omitted)); *In re Z.A.M.*, 374 N.C. 88, 101, 839 S.E.2d 792, 801 (2020) (concluding no abuse of discretion where trial court considered all N.C. Gen. Stat. § 7B-1110 factors, made proper findings on those factors, and analyzed the parental bond but gave more weight to other factors over the parental bond).

### III.    Conclusion

There is competent record and testimonial evidence to support the trial court's dispositional findings of fact, with the exception of adjudicatory finding of fact 31, as incorporated into dispositional finding of fact 1. *In re K.N.K.*, 374 N.C. at 57, 839 S.E.2d at 740. However, even without adjudicatory finding of fact 31, the trial court's decision to terminate Mother's parental rights was not an abuse of discretion as it was not "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *In re A.R.A.*, 373 N.C. at 199, 835 S.E.2d at 423 (quotation marks and citations omitted).

AFFIRMED.

Judges DILLON and ARROWOOD concur.