An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-860

Filed 6 May 2026

Johnston County, Nos. 24JT000051-500, 24JT000053-500

IN THE MATTER OF: J.S.K., J.S.K.

Appeal by Respondent-Mother from order entered 13 June 2025 by Judge Travis N. Wheeler in Johnston County District Court. Heard in the Court of Appeals 22 April 2026.

*Senior Assistant County Attorney Mariamarta T. Conrad for Petitioner-Appellee Johnston County Department of Social Services.*

*Mercedes O. Chut for Respondent-Appellant Mother.*

*Fox Rothschild LLP, by Alexandra J. Hirsch, for Guardian ad Litem.*

COLLINS Judge.

Mother appeals from the trial court's order terminating her parental rights to her children based upon neglect, willfully leaving the children in foster care or placement outside the home for more than twelve months without showing reasonable progress in correcting the conditions which led to removal, and dependency. Mother argues that the trial court erred by finding that any grounds existed to terminate her parental rights. For the reasons stated herein, we affirm.

## I.    Background

Mother is the biological mother of twins Jacob and Jennifer, who were born in April 2020.[1] The Johnston County Department of Social Services ("DSS") received a report in February 2021 that Mother failed to provide food or proper care for the children, and that Mother hit Jennifer on the back when she attempted to get up to eat.  The report further alleged that Mother and the children were staying in a hotel with a man whom Mother had met online, and that Mother was using alcohol and had engaged in domestic violence with the man she and the children were living with.  Based on this report, the children were placed with a temporary safety provider selected by Mother.  DSS obtained nonsecure custody of the children in July 2021 after the temporary safety provider informed the social worker that she could no longer care for the children.

The trial court entered an order in November 2021 adjudicating Jacob and Jennifer dependent.  After a permanency planning hearing in January 2022, the trial court entered an order finding that Mother "continues to work on her case plan and is making progress towards reunification" and "has exercised her visitation with the juveniles, which have been going well" and adopting a primary permanent plan of reunification and a secondary permanent plan of custody with a relative or other suitable person.  The court entered an order after a permanency planning hearing in

[1] We use pseudonyms to protect the identities of the minor children.

November 2022, finding that Mother "has stopped making progress toward reunification" and adopting a primary permanent plan of custody with a relative or other suitable person and a secondary plan of reunification. After an additional permanency planning hearing in February 2023, the court changed the primary permanent plan to adoption and the secondary permanent plan to guardianship based on Mother's failure to make progress towards reunification.

DSS filed petitions to terminate Mother's parental rights to Jacob and Jennifer in March 2024. After a multi-day evidentiary hearing, the trial court entered an order on 13 June 2025 terminating Mother's parental rights to the children based upon neglect, willfully leaving the children in foster care or placement outside the home for more than twelve months without showing reasonable progress in correcting the conditions which led to removal, and dependency. Mother appealed.

## II.   Discussion

Mother argues that the trial court erred by finding that grounds existed to terminate her parental rights to Jacob and Jennifer.

"Termination of parental rights involves a two-stage process." *In re L.H.*, 210 N.C. App. 355, 362 (2011) (citation omitted). At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under N.C. Gen. Stat. § 7B-1111(a). *In re A.W.*, 288 N.C. App. 123, 125 (2023). An adjudication of any single ground in N.C. Gen. Stat. § 7B-1111(a) is sufficient to support a termination of parental rights. *In*

*re E.H.P.*, 372 N.C. 388, 395 (2019). "If the petitioner meets its evidentiary burden with respect to a statutory ground and the trial court concludes that the parent's rights may be terminated, then the matter proceeds to the disposition phase, at which the trial court determines whether termination is in the best interests of the child." *In re H.N.D.*, 265 N.C. App. 10, 13 (2019) (citation omitted). "If, in its discretion, the trial court determines that it is in the child's best interests, the trial court may then terminate the parent's rights." *In re A.W.*, 288 N.C. App. at 125 (citation omitted).

"In reviewing a trial court's adjudication of grounds for termination, this Court must determine whether the findings are supported by clear, cogent and convincing evidence and whether the findings support the conclusions of law that one or more grounds for termination exist." *In re D.R.W.*, 298 N.C. App. 18, 23 (2025) (cleaned up). "If clear, cogent, and convincing evidence supports a trial court's findings which support its determination as to the existence of a particular ground for termination of a respondent's parental rights, the resulting adjudication of the ground for termination will be affirmed." *In re J.R.F.*, 380 N.C. 43, 47 (2022) (citation omitted). We review only those findings necessary to support the trial court's conclusion that grounds existed to terminate respondent's parental rights. *In re R.H.,* 295 N.C. App. 494, 498 (2024). "Any unchallenged findings are deemed supported by competent evidence and are binding on appeal." *In re K.Q.*, 381 N.C. 137, 141 (2022). "The trial court's conclusions of law are reviewed de novo." *In re Z.G.J.*, 378 N.C. 500, 509 (2021) (citation omitted).

## A. Dependency

Mother argues that the trial court erroneously found that grounds existed to terminate her parental rights based upon dependency "where the evidence does not prove she lacks the capacity to parent and will continue to lack the capacity in the foreseeable future." Mother concedes that she has a mild intellectual disability but specifically argues that "the record contains no evidence that disability alone makes [her] unable to provide proper care and supervision of the children, making them dependent."

A trial court may terminate parental rights for dependency upon finding that the parent is incapable of providing for the proper care and supervision of the juvenile, and that there is a reasonable probability that the incapability will continue for the foreseeable future. N.C. Gen. Stat. § 7B-1111(a)(6) (2025). "Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement." *Id.*

A dependent juvenile is defined as one "in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." *Id.* § 7B-101(9) (2025). "In determining whether

a juvenile is dependent, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re A.W.*, 377 N.C. 238, 249 (2021) (quotation marks and citations omitted).

Here, the trial court made the following unchallenged findings of fact:

> 16. [Mother] is incapable of providing for the proper care and supervision of the juveniles and there is a reasonable probability that her incapability will continue for the foreseeable future.
>
> 17. [Mother] completed a Psychological Evaluation with Matala Psychological Services in March 2021. [Mother] was diagnosed with Mild Intellectual Disability and Unspecified Depressive Disorder. The Psychological Evaluation found that [Mother] has an extremely low full-scale IQ, with extremely low findings for verbal comprehension, perceptual reasoning, and working memory.
>
> 18. The Psychologist further determined that [Mother] would not be viewed as capable of parenting her children independently, would need significant assistance with parenting and was likely to require assistance to meet her own needs.
>
> . . . .
>
> 20. After completing group parenting classes along with individual classes with the JCDSS Clinical Team, [Mother] was unable to demonstrate the knowledge she learned from these classes during her visits with the juveniles. Her parenting skills somewhat improved in that she was able to initiate diaper changes for the juveniles when appropriate. [Mother] was open to Social Worker Tabitha Hardin's suggestions to bring the children healthier snacks to visits. However, [] Mother struggled to supervise the twins without help from the social worker.
>
> . . . .

23. The visits then began to occur weekly in the community and quickly became disorganized. [Mother] was unable to manage the twins, who were toddlers at the time. At visits that took place at McDonald's, the social worker would sit with the twins while [Mother] ordered food for them. During visits at the park, [Mother] would have to chase after one twin while the social worker sat with the other twin. She could not parent the juveniles' behaviors and maintain their safety at the same time.

. . . .

25. On August 24, 2023, Social Worker Forsline supervised a visit that took place at the park in Smithfield, North Carolina. During the one-hour long visit, [Jacob] repeatedly ran out of sight of the [] Mother while [Mother] focused on [Jennifer]. Social Worker Forsline had to run after the juvenile and retrieve [Jacob] due to concerns for the juvenile's safety.

26. On February 29, 2024, Social Worker Forsline supervised a visit at McDonalds. The juveniles played on the inside playground and ate a meal. [Jacob] tried to leave the playground once or twice. Social Worker Forsline had to intervene to stop him from leaving. [Mother] was focused on [Jennifer] and did not notice [Jacob] trying to leave.

27. By not attending visits with the juveniles on a regular basis as afforded by the court order, [Mother] did not have the ability to practice the skills she learned through parenting education.

. . . .

33. An Out of Home Family Services Agreement was developed with [Mother] on August 10, 2021, which included the need to identify a support person. The social worker had frequent conversations with her about locating a support person. As of the date of this hearing, in March 2025, [Mother] has not located a support person in the three and a half years she has been involved with the Department.

34. . . . . [Mother] continues to lack an appropriate

alternative child care arrangement as of the adjudication portion of this Termination of Parental Rights hearing.

. . . .

36.     Due to the lengthy passage of time and her unsuccessful efforts, even with protective services in place, it is reasonable to conclude that [] Mother's inability to provide proper care and supervision for her children will continue indefinitely and that it will place them at a substantial risk of harm if they return to her care.  The twins are thusly dependent juveniles within the meaning of N.C.G.S. § 7B-101.

. . . .

49.     [] Mother's prolonged inability to improve her situation, despite some efforts in that direction, and her awareness of the services she needed to complete support both a finding of willfulness and of lack of reasonable progress considering the extensive period of time that has passed since the Department began working with [Mother].

. . . .

53.   Despite progress on the case plan that was crafted specifically to address the issues that led to the removal of the twins, [Mother] remains unable to parent the juveniles.

These unchallenged findings are deemed supported by competent evidence and are binding on appeal.  *See In re K.Q.*, 381 N.C. at 141.  These findings tend to show that Mother is unable to provide for the children's care and supervision and lacks an appropriate alternative child care arrangement.  *See* N.C. Gen. Stat. § 7B-101(9).  These findings thus support the trial court's conclusion that grounds exist to terminate Mother's parental rights to the children based upon dependency.  As grounds exist to adjudicate the juveniles dependent, we need not address Mother's

remaining arguments.  *See In re E.H.P.*, 372 N.C. at 395.

### III.    Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Judges TYSON and GORE concur.

Report per Rule 30(e).