IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-623

Filed 5 March 2025

Columbus County, No. 22JT16

In re: D.R.W., Jr.

Appeal by Respondent-Mother from orders entered 26 March 2024 by Judge J. Calvin Chandler in Columbus County District Court. Heard in the Court of Appeals 12 February 2025.

*Jane R. Thompson for Petitioner-Appellee Columbus County Department of Social Services.*

*Administrative Office of the Courts, by Matthew D. Wunsche, for Guardian ad Litem.*

*Robinson & Lawing, L.L.P., by Christopher M. Watford, for Respondent-Appellant Mother.*

COLLINS, Judge.

Respondent-Mother appeals from the trial court's termination of her parental rights to her minor child based on the grounds of willful abandonment and willful failure to make reasonable progress in correcting the conditions that led to the minor child's removal. Mother challenges two adjudicatory findings of fact as being unsupported by clear, cogent, and convincing evidence and argues that the trial court failed to make certain findings of fact regarding Mother's willfulness. Mother does not challenge the trial court's dispositional conclusion that it was in the minor child's

best interest to terminate Mother's parental rights. We affirm.

## I. Background

Mother is the biological mother of David,[1] a minor child born in 2013. On 17 February 2022, Columbus County Department of Social Services ("CCDSS") filed a petition alleging that David was neglected and dependent, stating that Mother did not have housing for herself or David, did not take David to school, used drugs in front of David, frequently dropped David off at "several people's houses," and frequently gave "temporary guardianship" of David to other people. CCDSS learned that Mother was on probation and contacted her probation officer; Mother was directed to drive to the CCDSS office and was immediately drug tested. Mother "tested positive for amphetamine, buprenorphine, THC, methamphetamine, and fentanyl." When asked by CCDSS where David was located, Mother first reported that he was in another county and unreachable, but a CCDSS social worker found David in Mother's car in the parking lot. Mother agreed to a kinship placement of David with her sister and granted CCDSS non-secure custody of David; CCDSS began efforts to contact David's biological father.[2] CCDSS conducted a hair follicle drug test of David, and he tested positive for amphetamines and methamphetamines.

On 29 June 2022, Mother stipulated to the following facts:

> [T]he respondent mother had a substance abuse issue. The

---

[1] We use a pseudonym to protect the identity of the minor child. *See* N.C. R. App. P. 42.

[2] Respondent-Father's parental rights to David were also terminated, but he is not a party to this appeal.

respondent mother's substance abuse led to the respondent mother and the juvenile having unstable housing and the respondent mother being unable to take the juvenile to school. The respondent mother placed the juvenile with various people for varying amounts of time without a definitive time to return to pick up the minor child. During one of these temporary placements, the juvenile was exposed to and tested positive for amphetamines and methamphetamines.

. . . .

[T]he respondent parents agree to include the following as components of a case plan for reunification: (1) completion of approved parenting classes; (2) completion of a substance abuse assessment and following recommended treatment; (3) completion of a mental health assessment and following recommended treatment; (4) submitting to random drug screens; and (5) obtaining the means to adequately provide for the juvenile's food, clothing, and shelter.

The parties acknowledge that from these facts the Court may enter an adjudication.

The trial court proceeded to an adjudication hearing, adjudicating David neglected based on the stipulated facts and dismissing the allegation of dependency. As part of the adjudication order, Mother again agreed to the components of the case plan outlined in the stipulation. On 11 August 2022, the trial court proceeded to the disposition hearing and entered a disposition order, finding that Mother had entered into a case plan with CCDSS; Mother was incarcerated at the time of the disposition hearing due to a probation violation and could not visit with David; and, prior to her incarceration, Mother had only visited with David one time. The trial court

maintained David's custody with CCDSS and found that reunification was in his best interest. The trial court again ordered Mother to comply with and satisfy the conditions of her case plan with CCDSS and ordered Mother to contact CCDSS to arrange supervised visits with David when she was released from incarceration.

The trial court held permanency planning hearings in September and December 2022. In its December 2022 permanency planning hearing order, the trial court found that: David was doing well in his foster placement and felt secure; Mother had recently contacted CCDSS and "her mental health therapy and substance abuse counseling seem to be ongoing"; Mother had "not done inpatient therapy and parenting classes"; Mother did not have suitable housing; Mother tested positive for various illegal drugs during screenings at Coastal Horizons on 25 October and 15 November 2022; and Mother had one virtual visit with David in May 2022 for seven minutes. The trial court found that "continued efforts of reunification with respondent parents would clearly be futile, unsuccessful and inconsistent with [David's] health, safety, and need for a safe, permanent home within a reasonable period of time." It ceased reunification efforts and adopted a primary permanent plan of adoption with a secondary plan of guardianship with a caretaker for David.

On 30 May 2023, CCDSS filed a petition to terminate Mother's parental rights ("TPR Petition"). The TPR Petition alleged grounds of abuse or neglect "within the meaning of G.S. 7B-101"; willful failure to make reasonable progress in correcting the conditions that led to David's removal; willful failure to pay a reasonable portion of

the cost of David's care; and willful abandonment.

On 2 June 2023, the trial court held another permanency planning hearing. In its June 2023 permanency planning hearing order, the trial court found that: David remained in foster care placement, was "thriving," and felt "secure"; Mother was "afforded the opportunity to participate in in-patient drug treatment . . . and she declined to participate"; Mother "has not had a visit with [David] since" the December 2022 permanency planning hearing; Mother had "maintained minimal contact with CCDSS since the inception of this case"; and Mother did not have appropriate housing or the ability to provide for David's needs. The trial court further found that Mother was not making adequate progress on her case plan, was not actively participating in the plan for David, and was not cooperating with CCDSS or the guardian ad litem ("GAL"). The trial court found that it was in David's best interest that CCDSS continue its efforts to implement the permanent plan of adoption with a secondary plan of guardianship with a court-approved caretaker. The trial court further found that, if Mother wanted to request visitation, she was "required to give one week's notice to the CCDSS so that proper measures can be taken so that the visitation can be made safely[.]"

On 26 September 2023, the trial court held a final permanency planning hearing. It again found that David had been adjudicated neglected based on the stipulations made by Mother; David was in a foster home for adoptive placement and making positive strides and thriving; David desired no contact with Mother; Mother

had not completed "any components" of her case plan; Mother was currently incarcerated for heroin and meth possession; and that the best permanent plan for David was the primary plan of adoption with a secondary plan of guardianship with a court-approved caretaker. The trial court concluded that it was in David's best interest to remain in CCDSS custody and in his foster home, and it decreed that there shall be no visits between David and Mother until ordered by the trial court.

On 1 December 2023, Mother filed a pro se motion requesting visitation with David and asking the trial court to appoint a new attorney to her case. She stated that she was enrolled in recovery services and had been sober for six months. She also stated that she did "not want [her] parental rights terminated." The trial court entered an order allowing Mother's attorney to withdraw and appointed her a new attorney, but it did not address Mother's request for visitation.

The TPR Petition came on for hearing on 25 January 2024. During the adjudication phase of the TPR hearing, the trial court took judicial notice of the prior adjudication order and disposition order. A social worker with CCDSS testified about Mother's case plan and Mother's inaction on her case plan, testifying that Mother: attended only three mental health counseling sessions; refused every drug screen requested by CCDSS during the twelve months prior to the filing of the TPR Petition; admitted to CCDSS that she was living in South Carolina and absconding from probation; provided no financial support for David; failed to complete any component of her case plan; did not contact CCDSS to have contact with David; had a single,

two-minute phone call with David on 30 May 2023; and failed to write a letter to David or respond to the letter that David wrote to her.

Mother also testified at the TPR hearing, testifying that: she had no documentation to prove that she completed any mental health counseling between February 2022 and May 2023; she lived with friends and had experienced periods of homelessness and incarceration; she did not have a job; she had not been in David's presence since his removal from her care; she had only briefly spoken to David one time over the phone in May 2023; she knew how to communicate with her social worker through CCDSS; and, as of May 2023, she had not worked to complete "any component" of her case plan with CCDSS. Mother also testified that she pled guilty to possession with intent to manufacture, sell, and deliver methamphetamine in May 2023 and was at the Rose House drug treatment center as a condition of her plea agreement.

The trial court adjudicated grounds to terminate Mother's parental rights to David based on willful abandonment and willful failure to make reasonable progress in correcting the conditions that led to David's removal. The trial court moved to the disposition phase of the TPR hearing, and it found that the termination of Mother's parental rights would further the permanent plan of adoption of David and that it was in David's best interest to terminate Mother's parental rights. The trial court entered the adjudication and disposition orders on 26 March 2024. Mother timely filed notice of appeal from the orders on 1 April 2024.

## II.    Discussion

Mother argues that (1) the trial court erred in concluding that she willfully abandoned David because the trial court "failed to make findings regarding [Mother's] limitations during the relevant six-month period to determine if [Mother] had the ability to maintain contact with" David and (2) the trial court erred in concluding that Mother willfully failed to make reasonable progress in correcting the conditions that led to David's removal when "the trial court's findings of a lack of reasonable progress were made under a misapprehension of law."

"Termination of parental rights involves a two-stage process." *In re L.H.*, 210 N.C. App. 355, 362 (2011) (citation omitted).  "At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under" N.C. Gen. Stat. § 7B-1111(a). *In re D.C.*, 378 N.C. 556, 559 (quotation marks and citation omitted).  "[A]n adjudication of any single ground in [N.C. Gen. Stat.] § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. 388, 395 (2019) (citations omitted).  "If the petitioner meets its evidentiary burden with respect to a statutory ground and the trial court concludes that the parent's rights may be terminated, then the matter proceeds to the disposition phase, at which the trial court determines whether termination is in the best interests of the child." *In re H.N.D.*, 265 N.C. App. 10, 13 (2019) (citation omitted).  At the dispositional stage, if the trial court determines that it is in the child's best interests, the trial court may, in its

discretion, terminate the parent's rights. *In re Howell*, 161 N.C. App. 650, 656 (2003).

In reviewing a trial court's adjudication of grounds for termination, this Court must "determine whether the findings are supported by clear, cogent and convincing evidence and [whether] the findings support the conclusions of law" that one or more grounds for termination exist. *In re E.H.P.*, 372 N.C. at 392 (quotation marks and citations omitted). "If clear, cogent, and convincing evidence supports a trial court's findings which support its determination as to the existence of a particular ground for termination of a respondent's parental rights, the resulting adjudication of the ground for termination will be affirmed." *In re J.R.F.*, 380 N.C. 43, 47 (2022) (citation omitted). This Court reviews "only those [challenged] findings necessary to support the trial court's determination that grounds existed to terminate" a parent's rights, and the unchallenged findings are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citations omitted). The trial court's conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

A trial court may terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) upon a finding that the parent has "willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition[.]" N.C. Gen. Stat. § 7B-1111(a)(7) (2023). "To find that a parent has willfully abandoned his or her child, the trial court must find evidence that the parent deliberately eschewed his or her parental responsibilities in their entirety." *In re A.L.L.*, 376 N.C. 99, 110

(2020) (quotation marks and citation omitted). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 251 (1997) (quotation marks and citation omitted). "[T]he 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re B.R.L.*, 379 N.C. 15, 18 (2021) (quotation marks and citations omitted).

A parent's incarceration during the relevant six-month period does not preclude a finding of the ground of willful abandonment. *In re E.H.P.*, 372 N.C. at 394. Our Courts have made "quite clear . . . that incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re A.G.D.*, 374 N.C. 317, 320 (2020) (quotation marks, brackets, and citations omitted). "Although a parent's options for showing affection while incarcerated are greatly limited, a parent *will not be excused from showing interest in the child's welfare by whatever means available.*" *Id.* (emphasis in original). Thus, while our Courts "recognize the limitations for showing love, affection, and parental concern" that incarcerated parents experience, they are still required "to do what they can to exhibit the required level of concern for their children." *Id.* (citation omitted).

Mother first argues that the trial court erred in concluding that she willfully abandoned David because the trial court "failed to make findings regarding [Mother's] limitations during the relevant six-month period to determine if [Mother]

had the ability to maintain contact with" David. Mother specifically challenges two adjudicatory findings of fact, findings 57 and 58, as being unsupported by clear, cogent, and convincing evidence. The challenged adjudicatory findings of fact state:

> 57. During the six month period prior to the filing of the petition in this case, [Mother's] . . . conduct in not visiting with [David], not communicating with [David], not completing any component of [her] reunification plan as ordered by the court, not providing any financial support for [David], and not making any appreciable progress in remedying the conditions that led to the removal of [David] evidence a willful intent to forego all parental duties and relinquish all parental claims with respect to [David].
>
> 58. [Mother] . . . [has] willfully abandoned [David] for at least six consecutive months immediately preceding the filing of the petition in this case.

The trial court also made the following relevant, unchallenged adjudicatory findings of fact:

> 22. On 29 July 2022, an order was filed in Columbus County file number 22 JA 16 finding [David] to be a neglected juvenile based on abandonment and living in an environment injurious to [David's] welfare. The adjudication was based on stipulations made by [Mother] and [Father]. . . .
>
> 23. On 11 August 2022, this Court filed a disposition order continuing legal and physical custody of [David] with CCDSS and ordering [Mother] and [Father] to enter into, and complete, reunification plans designed to address the conditions that led to the removal of [David] from his home. The disposition order required [Mother] and [Father] to:
>
>> a. Submit to a substance abuse and mental health assessment.
>>
>> b. Complete any treatment recommended following the substance abuse and mental health

assessments.

   c.  Submit to random drug screenings.

   d.  Enroll in, and complete, parenting classes.

   e.  Obtain and maintain appropriate, safe, and stable housing.

   f.  Obtain and maintain financial responsibility to allow them to appropriately provide for [David].

. . . .

31.  [Mother] quit school following completion of the 8th grade.

32.  [Mother] has been living on her own since she was 16 years old.  She is currently 33 years old.

33.  [Mother] has not seen or visited with [David] since the day that he was taken into the custody of CCDSS.

34.  From 17 February 2022 until 16 May 2022, [Mother] did not visit with [David], nor did she request to visit with [David].

35.  On 16 May 2022, a CCDSS employee provided [Mother] with a method to contact [David] and [Mother] contacted [David] that day by phone.  The telephone contact lasted approximately two minutes.

36.  From 17 May 2022 through 30 May 2023 [Mother] did not have any visitations with [David], did not have any telephone contact with [David], and did not communicate with [David] in any other manner.

37.  Since [David] was taken into the custody of CCDSS, [Mother] has not had a job, has not had a valid driver's license, and no reliable transportation.

38.  From the date that [David] came into the custody of the CCDSS through the date that the petition was filed in this case, [Mother] was a regular user and abuser of illegal controlled substances.

39.  [Mother] did enter into a reunification plan with CCDSS with requirements as set forth in [finding] #23 above.

40. [Mother] did attend approximately three appointments at Coastal Horizons for mental health treatment and did receive some substance abuse counseling as part of those appointments.

41. [Mother] did not comply with the requirement that she obtain a mental health assessment and complete any recommended treatment.

42. [Mother] did not comply with the requirement that she obtain a substance abuse assessment and complete any recommended treatment.

43. [Mother] did not appear for drug screenings requested by CCDSS at any time between 17 February 2022 and 30 May 2023. However, [Mother] admits that she tested positive for illegal controlled substances on multiple drug screenings at Coastal Horizons during the time she attended there.

44. [Mother] did not complete an approved parenting class.

45. From the date that [David] came into the custody of the CCDSS through the date that the petition was filed in this case, [Mother] did not have stable housing. [Mother] was homeless for periods of time, lived with friends and family for periods of time, and was incarcerated for periods of time.

46. [Mother] was incarcerated at various times from the date that [David] came into the custody of the CCDSS through the date that the petition was filed in this case.

47. [Mother] was incarcerated at the time that the petition was filed in this case. She has since been released and is currently living at the Rose House (a residential treatment facility located in Brunswick County, North Carolina) pursuant to a term of her supervised probation.

48. From the date that [David] came into the custody of the CCDSS through the date that the petition was filed in this case, [Mother] did not provide any financial support for [David].

49. [Mother] has not had, and still does not have, a valid driver's license or reliable transportation.

50. From 21 February 2022 until 30 May 2023, there were 14 court hearings conducted in Columbus County file # 22 JA 16. [Mother] attended four of those hearings . . . .

51. Following a hearing in December 2022, [Mother] did indicate that she would like to visit with [David]. [Mother] was asked to write a letter to [David]. [Mother] did not write a letter to [David] prior to the filing of the petition in this case.

52. [David] wrote a letter to [Mother] on 6 April 2023. A CCDSS employee gave the letter to [Mother]. As of the filing of the petition in this case, [Mother] did not respond to [David].

53. From the time that [David] came into the custody of CCDSS through the date of the filing of the petition in this case, neither [Mother] or [Father] provided any gifts, cards, or letters to [David].

54. For the six-month period prior to the filing of the petition in this case, neither [Mother] nor [Father] attended any child and family team meetings that were held to discuss issues related to [David]. Notices of the meetings were mailed to [Mother] and [Father] at the last address that CCDSS had on file and it is unlikely that either actually received any of those notices due to the instability of their living arrangements.

. . . .

56. [Mother] and [Father] had the ability to take appropriate action to make reasonable progress under their circumstances to correct the conditions that led to the removal of [David].

The above unchallenged findings of fact "are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. at 407. These findings show that, during the relevant six-month period prior to the filing of the petition, Mother: "had not seen or visited [David]"; did not request any visits with David; "did

not have any telephone contact with [David] and did not communicate with [David] in any other manner"; failed to respond to a letter written to her by David; did not provide any gifts, cards, or letters to David; provided no financial support for David; "was a regular user and abuser of illegal controlled substances"; failed to appear for drug screenings when requested by CCDSS; admitted to testing positive for illegal controlled substances on multiple drug screenings at Coastal Horizons; and failed to complete the majority of her case plan with CCDSS. These unchallenged findings of fact support the challenged findings of fact 57 and 58. Additionally, there is clear, cogent, and convincing record evidence, in the form of court reports from CCDSS, court reports from the GAL, and testimony from the CCDSS social worker and Mother to support the challenged findings of fact 57 and 58.

Moreover, contrary to Mother's assertion that the trial court failed to consider her limitations and failed to make findings regarding those limitations, the trial court's unchallenged adjudicatory findings 31, 32, 35, 39, 40, 43, 45, 47, and 54 show that the trial court appropriately considered Mother's history and circumstances. The clear, cogent, and convincing record evidence, along with the trial court's adjudicatory findings of fact, support that Mother made no effort to contact David in any manner during the relevant six-month period and took no action to show any "love, affection, and parental concern" for David. *In re A.G.D.*, 374 N.C. at 320.

As Mother's behavior evinces a "complete failure to show any interest" in David, *In re L.L.M.*, 375 N.C. 346, 353 (2020), the trial court thus properly determined

that she willfully abandoned David and terminated Mother's parental rights. Because the trial court properly terminated Mother's parental rights on one ground, we need not address her arguments as to the ground of willful failure to make reasonable progress in correcting the conditions that led to David's removal. *See In re B.S.D.S.*, 163 N.C. App. 540, 546 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground . . . found by the trial court.").

## III.  Conclusion

The trial court's challenged findings of fact that are supported by clear, cogent, and convincing evidence, together with the unchallenged findings of fact, support the trial court's conclusion of law that Mother willfully abandoned David for the six-month period of time preceding CCDSS's filing of the TPR Petition. Mother does not challenge the trial court's conclusion that it was in David's best interest to terminate Mother's parental rights. We thus affirm the trial court's orders.

AFFIRMED.

Chief Judge DILLON and Judge FLOOD concur.